[No. 1031, February 2, 1906.]

ELIAS CHAVES and EMILIA CHAVES DÈ ARMIJO, Appellees, v. BEN MYER, Adm., and MARIA A. DE LUCERO and J. BLAS LUCERO, Appellants.

### SYLLABUS.

1. The complaint examined and held sufficiently to allege that plaintiffs were the owners of the fund loaned by the defendant Myer to the defendants Lucero.

2. Questions not presented to the court below in the proper way nor to this court by assignment of error are not the subjects of review by this court.

Chaves v. Lucero.

3. The equitable remedy, given a cestui que trust to follow trust funds into property in which they may have been fraudulently invested by his trustee is not taken away by statutory provisions affording a remedy by attachment or garnishment, but the legal and equitable remedies are to be considered concurrent.

4. Nor is such equitable remedy defeated by the fact that the cestui que trust might sue the trustee and his bondsmen and enforce his claim by levy, the rule being well settled that the defrauded party has his option either to hold the trustee personally reliable, or to follow his money into the property in which it has been invested.

5. Nor is the remedy of the defrauded cestui que trust to realize out of such property purchased with his funds affected by the fact that the agreement between the trustee and the owner of such property which led up to the diversion of such funds, was an illegal one, the cestui que trust having been no party to such agreement.

Appeal from the district court of Bernalillo county, before BENJAMIN S. BAKER, Associate Justice. Affirmed.

WILLIAM B. CHILDERS, for appellants.

To make the assignment of a mortgage good at law, there must be a formal instrument, conveying the legal title.

> 1 Jones on Mortg. Sec. 787; Sanders v. Cassady, 5 Southern Rep. 503; Adams v. Parker, 12 Gray 53; Warden v. Adams, 15 Mass. 233.

An equitable assignment of a mortgage may be made by a sale of it, without either a formal transfer of the mortgagees interest in the property or an indorsement of note.

> 1. Jones on Mortg. Sec. 813; Pearson v. Warren, 29 Mich. 9; Carter v. Taylor, 4 Tenn. (3 Head) 30.

The terms of a mortgage cannot be varied by any verbal agreement or understanding of the parties, anterior to the execution of it.

Chaves v. Lucero.

1 Jones on Mortgages, Sec. 96; Quartermores v. Kennedy, 29 Ark. 544; Patterson v. Taylor, 15 Fla. 536.

Where the mortgage provides a method of ascertaining the indebtedness, the adoption of any other is precluded.

20 Am. & Eng. Ency. (2 Ed.) 928-9; Emery v. Owens, 7 Gill. (Md.) 438; Bullock v. Bergman, 46 Md. 271; Bank of Utica v. Finch, 3 Barbours Ch. 293; Dunham v. W. Steele Packing, etc., Co. 100 Mich. 75.

If the language were of doubtful meaning, evidence of the surrounding circumstances, and what was said by the parties interested would be competent to determine its real meaning.

20 Am. & Eng. Ency. 925; Norris v. Nixon's Executors, 1 How. 118; Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 866; Hunt v. Rousmaniere, 1 Peters 13; Insurance Co. v. Wilkieson, 13 Wallace, 231; Snell v. Ins. Co. 98 U. S. 89; Walden v. Skinner, 101 U. S. 583.

When there is no ground of equity in the bill, a general demurrer will be sustained.

Oelrichs v. Spain, 15 Wallace, 227; foot note.

What the demurrer admits.

Lockhart v. Leeds, 10 N. M. 568.

A mortgage given to secure a debt made illegal by statute or in violation of the common law, cannot be enforced.

1 Jones on Morts. 617; Reynolds v. Nicholls, 12 Ia. 398; Norris v. Norris, 36 Am. Dec. 139; Pearce v. Wilson, 111 Penn. State Rep. 14; Lindsay v. Smith, 78 N. C. 328; 21 Am. Rep. 463; Peed v. McKee, 42 Ia. 689; Sterry Baker v. Michael Collins, 91 Mass. 253.

Considerations of public policy are often deemed paramount to private rights, and where they are opposed, the latter must yield.

Wildey v. Collier, 7 Md. 273; Lefevre v.

Haydel, 21 Ia. An. 663; Maxfield v. Hocker, 2 N. Y. Sup. 77; Stillman v. Looney, 3 Cald. (Tenn.) 20; Gilbert v. Holmes, 64 Ill. 548; Marshall v. B. & O. R. R. Co., 16 How. 314, 334; See also, Toole Co. v. Norris, 2 Wall. 55; Trist v. Child, 21 Wall. 450; Meguire v. Corwine, 101 U. S. 111; Oscanyan v. Arms Co. 103 U. S. 274; Teal v. Walker, 111 U. S. 252; Railroad v. Lockwood, 17 Wall. 357; Bank of Ky. v. Adams Express Co. 93 U. S. 174; Roses Notes to U. S. Reports 377.

It is well established that an allegation that one is "*the owner in fee simple,*" is the statement of an ultimate fact, and that it is good pleading.

Ely v. New Mexico, 129 U. S. 291; Gage v. Kaufman, 133 U. S. 471; Gillett v. Robbins, 12 Wis. 329; Johnson v. Vance, 86 Cal. 129.

An administrator is a trustee of the estate coming into his hands as such, for the benefit of all persons interested therein.

3 Pomeroy Eq. Jur. Sec. 1088; Forsythe v. Woods, 11 Wall. 484.

Whenever one person has wrongfully taken the property of another and converted it into a new form, or transferred it, trust follows the new form or property into which it goes.

2 Pom. Eq. Jurs. Secs. 1048, 1051; Oliver et al., v. Piatt; 3 How. 333–413; Hill v. McIntire, 30 N. H. 410.

An abuse of a trust can confer no rights on the party abusing it, or on those who claim in privity with him.

2 Story Eq. Juris. Secs. 1257, 1258-9.

The cestui que trust, as being the real party in interest, may maintain a bill in equity for the benefit of the trust estate and the protection of his interests.

22 Ency. Pl. & Pr. Page 158, 166; See also, Story's Eq. Juris. Secs. 1257, 1258, Supra. and 2 Pomeroy Eq. Juris. Secs. 1048, 1051.

It may be shown by parol what the object of the parties was in executing and receiving the mortgage.

> Peugh v. Davis, 96 U. S. 332, 336. See also, Brick v. Brick, 98 U. S. 514; Russell v. Southard; Beach Modern Eq. Juris. Sec. 408.

A court of equity has jurisdiction as a part of its inherent powers, to grant relief in suits brought to recover a fund impressed with a trust, notwithstanding a court of law may also grant adequate relief upon the same facts.

> 1 Pomeroy's Eq. Juris. Secs. 300, 304.

The general demurrer does not go to the relief prayed for, and there is no assignment of error to bring before this court for review the amount of the judgment rendered.

> Bliss on Code Pleading, Sec. 417; See 9 Cyc. Contracts, Public Policy, pp. 481, 550, 556, 557.

SUPPLEMENTAL AND REPLY BRIEF OF APPELLANTS.

Agreements in violation of positive law are those which are expressly or impliedly prohibited either (1) by some rule of the common law, or (2) by some express statutory provision.

> Cyc. of Law and Procedure, 466; Arnold v. Clifford, 2 Sumn. 238; 1 Fed. Cases No. 555; Ives v. Ives, 25 N. C. 538, 40 Am. Dec. 421; 9 Cyc. Law and Procedure, 168; See also 15 Am. & Eng. Ency. of Law, 943; Gray v. McReynolds, 65 Iowa, 461, 21 N. W. Rep. 777; 9 Cyc. Law and Procedure, 481, 564; Milne v. Huper, 17 Fed. Cases No. 9617, p. 404; 15 Am. & Eng. Ency. of Law 932, 935.

A contract will be held illegal though it does not involve the commission of an indictable offense, or the violation of a statutory prohibition, and though the formation of it does not amount to the offense of conspiracy, if it involves or contemplates the commission of a civil injury to or the perpetration of a fraud upon third persons."

> Harrington v. Victoria Graving Dock Co. 3 Q. B. D., 549; Jackson v. Dechaore, 3 T. R.

Chaves v. Lucero.

551; Kerr v. Brunton, 24 U. C. Q. B., 390;
Stewart v. Scott, 54 Ark. 187; Moody v. New-
mark, 121 Cal. 446; Mitchell v. Cline, 84
Calif. 409; Marcy v. Crawford, 16 Conn. 549;
Roy v. Mackin, 100 Ill. 246; Kirkpatrick v.
Clark, 132 Ill. 342; Gray v. McReynolds, 65
Iowa, 461; Buchtella v. Stepanek, 53 Kans.
373; Bennett v. Tiernay, 78 Ky. 580; Gravier
v. Carraby, 17 La. 118; Avery v. Halsey, 14
Pic. (Mass.) 174; Rice v. Wood, 113 Mass.
133; Knight v. Linzey, 80 Mich. 396; St.
Mary's Benev. Assoc..v. Lynch, 64 N. H. 213;
Adams v. Outhouse, 45 N. Y. 318; Piatt v.
St. Clair, 6 Ohio 81; Taylor v. Worrel, 4 Leg.
Gaz. (Pa.) 401; Young v. Bartman, 1 Phila.
(Pa.) 203; 15 Am. & Eng. Ency. of Law, p.
945-7-8.

Any contract which has for its object a faithless
abandonment of the duties of an administrator cannot be
enforced in law.

Forsyth v. Woods, 11 Wallace, 486;
Meguire v. Corwin, 101, U. S. 108; Brick v.
Seal, 45 Mo. App. 478; 1 Jones on Mortgages,
617; Pearce v. Wilson, 111 Penn. State Rep.
14; Lindsay v. Smith, 78 N. C. 328; Peed v.
McGee, 42 Ia. 689; 13 Am. & Eng. Ency. of
Law, page 816; 15 Am. & Eng. Ency. of Law,
1004; Traders Nat. Bank v. Sture, 43 N. E.
186.

If the assignee takes with notice of the illegality in
the inception of the instrument, he, of course, cannot re-
cover.

15 A. & E. Ency. of Law, p. 1012 and p.
1003.

A bonafide holder of a negotiable instrument for a
valuable consideration, without any notice of the facts
which impeach its validity as between antecedent parties,
if he takes it under an endorsement before the same be-
comes due holds the title unaffected by these facts, and
may recover thereon.

Swift v. Tyson, 16 Peters, 15, 4 Roses

Notes, 128; 1 Perry on Trusts, Sec. 243; Potter v. McDowell, 43 Mo. 93; 2 A. & E. Ency. of Law, 1079; Hanaur v. Doane, 12 Wallace 342; McBlair v. Gibbs, 17 Howard, 233-232; Gridley v. Wynant, 3 How. 500; Planters Bank v. Union Bank, 16 Wallace 500.

The assignee stands in no better position than the assignor.

McBlair v. Gibbs, Supra.; Armstrong v. Toler, 11 Wheat. 258-269; Rothrock v. Perkinson, 61 Ind. 39; Buchanan v. Bank, 5 C. C. A. 83. See also, Eastwood v. Kenyon, 11 Adol & E. 438-446; Mills v. Wyman, 3 Pick., 207; Dodge v. Adams, 19 Pick. 429; Wiggins v. Keizer, 16 Ind. 252; Hendricks v. Robinson, 55 Miss. 649; Dearborn v. Bowman, 3 Metc. (Mass.) 155; Updike v. Titus, 13 N. J. Eq. 151; Cook v. Bradley, 7 Conn. 57; Cutler v. Robertson, 14 Smedes & M., 18; Edwards v. Skirving, 1 Brev. 548; Blasdel v. Fowle, 120 Mass. 447; Morris v. Norton, 75 Fed. Rep. 926; Murray v. Chicago & N. W. Ry. Co., 62 Fed. 41; Hoffman v. McMullen, 83 Fed. Rep. 384; Hyer v. Richmond Traction Co. 80, Fed. Rep. 845.

This mortgage is nothing more than a special guaranty, and enures to the benefit of Myers alone.

Smith v. Starr, 4 Hun, (N. Y.) 123; Evansville National Bank v. Kaufman, 93 N. Y. 273; 1 Jones on Mortgages, Sec. 787; Sanders v. Cassady, 5 Southern Rep. 503; Adams v. Parker, 12 Gray. 53; Warden v. Adams, 15 Mass. 233.

The terms of a mortgage cannot be varied by parol, unless it has been first shown that fraud, accident or mistake have caused the mortgage to be expressed otherwise than the parties intended.

1 Jones on Mortgages, Sec. 96; Patterson v. Taylor, 15 Fla. 536; Emery v. Owens, 7 Gill. (Md.) 438; Bullock v. Bergman, 46 Md. 271; Bank of Utica v. Finch, 3 Barb. Ch. 293;

Dunbar v. W. Steele Packing Co. 100 Mich.
75; 20 A. & E. Ency. 952; Norris v. Nixons
Executors, 1 How. 118; Pomeroy's Equity
Jur. Vol. 2, Sec. 866; Hunt v. Rousmanier,
1 Peters, 13; Ins. Co. v. Wilkieson, 13 Wal-
lace, 231; Snell v. Ins. Co. 98, U. S. 89; Wal-
den v. Skinner, 101 U. S. 583; 3 Pomeroy's
Eq. Jur. Sec. 1196.

The bill does not pray for the reformation of the
mortgage on account of fraud, accident or mistake. The
recovery must be had upon the case made by the pleadings
or not at all.

Lockhart v. Leeds, 10 N. M. 594; Gras-
holz v. Newman, 21 Wallace, 488.

There is not a semblance of a trust arising on the
allegations of the complaint.

1 Perry on Trusts, Sec. 75, 226; Brown
on the Statutes of Frauds, Sec. 79-82; 2 Pom-
eroy's Eq. Jur. Secs. 1006-7-9, and Note; and
Secs. 1031, 1048, 1051.

OPINION OF THE COURT.

POPE, J.—This is a suit brought by the appellees,
Elias Chaves and wife, alleging in their complaint substan-
tially, as follows: That on November 17, 1902, plain-
tiffs recovered a judgment in the district court of Berna-
lillo county against the defendant Myer individually and
as administrator of the estate of Rafael Armijo deceased
for the sum of twenty-two hundred and seven and 58-100
dollars, upon which judgment on November 28, 1902,
execution was issued with return of *nulla bona* dated Jan-
uary 27, 1903. A certified copy of the judgment is at-
tached to the complaint. The complaint after alleging
that the defendant Myer is insolvent avers that the judg-
ment was for the distributive share of the estate of the
said Rafael Armijo, to which plaintiffs are entitled. It is
further alleged that on March 6, 1900, the defendants,
Maria A. de Lucero and J. Blas Lucero, her husband, ex-
ecuted and delivered to the defendant Myer a mortgage
upon certain real estate in Bernalillo county, which mort-
gage was duly recorded March 7, 1900, a copy of the mort-

gage is attached to the complaint. An inspection of this shows that it runs to Myer personally and upon the following conditions: "Whereas the said parties of the first part (Maria A. de Lucero and J. Blas Lucero) have received of the said party of the second part (B. Myer) two thousand and eight dollars, said sum having been paid to the said second party in his capacity of administrator *de bonis non* of the estate of Rafael Armijo, dec., to which said estate said sum of two thousand and eight dollars is belonging; Now, therefore, if within the time of limitation under the laws of the Territory of New Mexico, regulating the administration of estates and the liability of administrators, no claim or demand shall be made against Ben Myer as administrator of said estate nor any proceedings be entered against him, then this indenture shall be null and void and of no effect, otherwise to remain in full force." It is further alleged that at the time of the execution and delivery of this mortgage, Myer as administrator of the Armijo estate had in his hands the sum of $2,008, which "in equity and good conscience belonged" to plaintiffs and which they were entitled to receive from said defendants as their distributive share of said estate, which said Myer and said J. Blas Lucero well knew; but that the said J. Blas Lucero, contriving to defraud plaintiffs out of said sum of money caused said mortgage to be executed and delivered to the said Myer to induce him, and did thereby induce him, to procure from the probate court of Bernalillo county an order authorizing him to pay over to the said J. Blas Lucero the said sum of $2,008 and to pay him, the said Lucero, under said order the said sum of money. It is further alleged that while by the terms of said mortgage it is conditioned as aforesaid, it was in truth and in fact, executed for the purpose of securing the payment of any judgment which these plaintiffs might obtain against said Myer for the distributive share of said estate and for no other purpose except as above stated to induce Myer to turn over to said Lucero, the above named sum in his hands as administrator and to enable the said Lucero to get possession of the same. It is further alleged, that said order allowing the payment of said sum on said mortgage, was obtained without notice

Chaves v. Lucero.

to plaintiffs, although Myer and Lucero well knew, that plaintiffs were claiming said sum; that thereafter, plaintiffs appealed from said order of the probate court to the dsitrict court, when said order was vacated and set aside and the judgment of November 17, 1902, above referred to, was entered.  The complaint also alleges that plaintiffs have requested Myer to bring suit to foreclose said mortgage, but that he refused so to do and complainants pray that said mortgage be foreclosed to satisfy said judgment of $2,207.58.  To this complaint the defendant Myer answered in effect, admitting all of its allegations. The defendant Lucero, demurred upon the ground, *first,* that said complaint does not state a cause of action against defendants, and *second,* upon the ground that these defendants are not necessary or proper parties to the action.

The court overruled the demurrer and then Lucero electing to stand thereon, judgment was entered granting the relief prayed, whereupon, the last named defendants prosecute their appeal to this court.  The assignments of error and the briefs and arguments point out a number of respects in which, it is alleged, the complaint failed to state a cause of action.  It is urged, *first,* that there is no sufficient allegation that the sum of money advanced by Myer to Lucero belonged to the plaintiffs and that there could not be any such allegation for the reason that no particular sum could belong to any designated legatee in advance of a final settlement of the Armijo estate.  We are of opinion, however, that the allegation that the sum held by Myer as administrator, and subsequently loaned to the Luecros, "in equity and good conscience," belonged to plaintiffs and that they "were entitled to receive (it) from said defendant as their distributive share of said estate" sufficiently alleged ownership, especially when taken in connection with the recital and finding in the judgment attached to and made a part of the complaint to the effect that "the said Ben Myer as such administrator has settled all claims against said estate except those of said appellants," (Elias Chaves and wife, the plaintiffs herein).  It is further contended that the amount paid over to the Luceros was a part of the $2,708, which the judgment recites belongs as a matter of fact to

the Luceros as their part of the Armijo estate.   We find nothing in the record to sustain this rule; on the contrary it is clearly averred that the sum here in controversy was a fund belonging to the plaintiffs by reason of the fact that all other claims, both in the nature of debts and bequests, had been paid.

It is said further, however, that conceding the liability of the defendant J. Blas Lucero, no such liability exists against the wife Maria A. de Lucero, there being no allegation that she knew of or participated in the fraud.  No such point was apparently made in the court below, however.   The only grounds of demurrer there urged were *first,* that the complaint "does not state a cause of action against *defendants"* and *second,* "defendants are not necessary or proper parties to the action." As was said in Crabtree v. Segrist, 3 N. M., 500: "It does not appear that either of these points was raised or insisted upon at the trial and we are therefore of opinion that they cannot be presented and urged before us.   The general rule that only such assignments of error can be presented to the appellate court as were brought to the attention of the trial judge, so as to permit of their correction by him, is strengthened in this Territory by the statutory provision that 'no exceptions shall be taken in an appeal to any proceeding in the district court, except such as shall have been expressly decided in that court.' " But independent of this consideration it is clearly averred that Mrs. Lucero joined in the note and mortgage made to Myer in exchange for plaintiff's legacy.   She admits in her mortgage that the whole amount was paid to her and to her husband and that the same belonged, when received by them, to the Armijo estate.   Under the other facts averred in the case, this sum was wrongfully paid to and received by both and no reason occurs to us why the lien given to secure the repayment of this amount should not be foreclosed as against both.   It is further to be noted that the complaint does not ask nor does the decree award a general judgment against either, but is confined to a provision for the sale of the property mortgaged.

It is also urged that the suit cannot be maintained

because an adequate remedy existed at law in that the plaintiffs could have sued out garnishment upon the Luceros and thus have held the amount loaned them, to respond to the judgment secured. We are unable to concur in this view. The suit here brought is for the purpose of impressing a trust upon the mortgage security taken by Myer in exchange for plaintiff's money, and is designed to realize the amount by foreclosure of the lien. The character of action is one peculiarly of equity cognizance as a part of the original chancery jurisdiction.

The remedy by attachment or garnishment or both is not a common law one, but rests upon statute. It is well settled that the fact, that statute may have given an additional remedy, does not oust the courts of pre-existing inherent equity jurisdiction affording the same result in the absence of words in the statute prohibitive of such concurrent jurisdiction.

Thus in 1 Pomeroy's Eq. Juris. Sec. 276, it is said:

"There is still another principle affecting the equitable jurisdiction, which remains to be considered in all its relations, namely: Whenever a court of equity, as a part of its inherent powers had jurisdiction to interfere and grant relief in any particular case or under any condition of facts and circumstances such jurisdiction is not, in general, lost, or abridged, or affected, because the courts of law may have subsequently acquired a jurisdiction to grant either the same or different relief, in the same kind of cases, and under the same facts or circumstances. * * * In other words, the exclusive jurisdiction to grant purely equitable reliefs, as well as the concurrent jurisdiction to confer legal reliefs, is still preserved, although the common law courts may have obtained authority to award their remedies to the same parties upon the same facts." And in Section 278, among the classes of cases instanced in which this principle has been applied, are "suits to recover a fund impressed with a trust or where a trust relation in view of equity exists between the parties where the plaintiff might recover the same sum by an action of assumpsit for money had and received or like legal action," and also Sec. 280, where it is said that "a statute authorizing a garnishment by a proceeding at law, does not take

away nor abridge the equity jurisdiction to enforce an equitable attachment or sequestration by suit under the same circumstances."

We are of opinion, however, that the remedy by garnishment would fall very far short of being equally plain, adequate and complete with that of foreclosure. The one would be to seek a judgment against the Luceros upon the incoming of their answer, to be followed by an effort to find unencumbered property out of which such judgment might be realized, while the other gives the direct remedy of foreclosure upon property already subject to a lien. We consider this point therefore as entirely untenable.

It is further urged that the amount for which judgment was rendered was excessive in that it could at most have been only for the amount of the trust fund diverted, whereas judgment was rendered foreclosing the lien to pay the entire amount of the judgment secured. We do not find it necessary to decide this question for the reason that the assignments of error raise no point as to the amount of the judgment. It has been distinctly held by this court that it will not consider questions not raised by the assignment of errors. Maxwell v. Tufts 8 N. M. 401; Lamy v. Lamy, 4 N. M. 29.

It is further urged that the form of mortgage is purely a personal security to Myer, that it could be enforced only by him, and the plaintiffs' redress was by a suit against Myer and his bondsmen. We do not consider this position well founded. The theory upon which the action was brought was that Myer, a trustee, had invested the trust funds in another form of property, to-wit, a real estate mortgage, which latter he was holding in his own name in disregard and defiance of his trust. A court of equity will not permit an administrator under such circumstances to dictate terms. He cannot divert trust funds and say to the defrauded *cestui que trust,* 'your only remedy is to sue me and secure the satisfaction of your claim by levy, if perchance, I still have the property purchased with your money.' On the contrary, the ancient equitable principle is that the *cestui que trust* under such circumstances has the option either to hold the trustee, personally liable or to follow his money into the

property which the trustee has in violation of his trust secured.

In Oliver v. Piatt, 3 How. 401, it was said by the court, speaking through Mr. Justice Story:

"It is a clearly established principle in that (equity) jurisprudence, that whenever the trustee has been guilty of a breach of the trust and has transferred the property, by sale or otherwise, to any third person, the *cestui que trust* has a full right to follow such property into the hands of such third person, unless he stands in the predicament of a bona fide purchaser, for a valuable consideration without notice, and if the trustee has invested the trust property or its proceeds in any other property into which it can be distinctly traced, the *cestui que trust* has his election either to follow the same into the new investment or to hold the trustee personally liable for the breach of trust."

The general principle is thus stated in 2 Pom. Eq. Juris. Sec. 1051:

"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. . If the person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name; or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title; or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name; in these and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer but as long as it can be followed and identified in whosesoever hands it may come, except in those of a bona fide purchaser for value and without notice; and the court will enforce the constructive trust for the benefit of the beneficial owner or original *cestui que trust,* who has thus been defrauded."

And in 2 Story Equity Jurisprudence, Section 1258, it is said:

"The general proposition, which is maintained at law

and in equity upon this subject is, that if any property, in its original state and form, is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right, (not being bona fide purchasers for valuable consideration without notice) any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it or on those who claim in privity with him. This principle is fully recognized at law in all cases where it is susceptible of being brought out as a ground of action or of defense in a suit at law. In courts of equity, it is adopted with a universality of applications."

It is further urged that under the terms of the mortgage default had not occurred justifying a foreclosure. The condition of the mortgage, whether viewed from the standpoint of the actual language used or as illumined by the allegation that said mortgage was executed "for the purpose of securing the payment of any judgment which plaintiffs might obtain against Myer for their distributive share of the estate and for no other purpose," was satisfied by the allegations of the complaint, which show that a claim had been against Myer, as administrator, the propriety and seasonableness of which had been established, prior to the bringing of this suit, by a judgment of the district court.

Finally, it is argued and with special emphasis, that upon the allegation of the complaint the mortgage is void as against public policy and cannot be enforced. It is urged that the allegation to the effect that the mortgage was given to induce the administrator to procure from the probate court an order allowing him to pay over to Lucero the amount in hand belonging to appellees is tantamount to an allegation of a conspiracy to embezzle that sum of money in the hands of the administrator and to defraud appellees out of their interest in the estate and that a court of equity will leave the transaction where it finds it and will refuse to grant any relief, even to the innocent defrauded owner of the fund misappropriated. We are unable to acquiesce in this view.

Chaves v. Lucero.

Considering first, the character of the agreement between Myer and Lucero, we incline to the opinion that the allegations of the complaint when fairly construed are simply to the effect that before the defendant Myer would loan to Lucero the fund in his hands belonging to appellees, he exacted from the Luceros the mortgage in question; and having secured it he thereupon procured an order of the probate court permitting such loan. Whatever may be said of the transaction as a usurpation of power by the administrator, we believe there would be little difficulty in holding that it fell short of being such an agreement as upon principles of public policy would be debarred from enforcement, even by Myer himself. But, however this may be, we are unable to subscribe to the view that where by fraud between two parties there is effected the substitution of a mortgage for cash belonging to an innocent third party, the latter is debarred from realizing on such security, which is practically his. It would be using the law as a means of fraud, rather than of its prevention, to hold the funds of a person in the hands of a trustee may be converted by a corrupt agreement between the trustee and a third party and yet the *cestui que trust* be absolutely remediless to realize on the security, simply because the agreement to which he was in no sense a party and for which he may have been in no sense to blame, was corrupt. Bereft of his property by fraud of others, and deprived of his right to reclaim it or its equivalent because they, not he, had been dishonest, he would indeed have reason to say that the law was a mere sham and that the courts were without efficiency to redress private wrongs. We have not overlooked the numerous authorities cited by appellants to the effect that the law will not lend its aid to the enforcement of an immoral agreement or one in contravention of public policy, and from this rule of law there can be no dissent. The extent to which the cases go is, however, to enforce the rule against the parties to the wrong, not against the innocent victim of it. We find no support in the authorities, not in morals, for the construction that one may wrong another and then set up the wrong as a defence, when called to account.

The judgment of the lower court is affirmed.

Henry v. Cartwright.

William J. Mills, C. J., Edward A. Mann, A. J., John R. McFie, A. J., Frank W. Parker, A. J., concur

Abbott, A. J., not having heard the argument took no part in this decision.