Jeffrey FUHRMAN, et al., Respondents,

v.

UNITED AMERICA INSURORS, Appellant,

Claude Sinnen, d. b. a. Claude J. Sinnen Insurance Agency, Respondent,

James D. Farrell, Respondent,

Linda Marie Farrell, Respondent,

Paul Olson, as Trustee for the heirs and next of kin of Mark Paul Olson, deceased, Respondent.

No. 48130.

Supreme Court of Minnesota.

July 14, 1978.

Scholle & Scholle, Minneapolis, for appellant.

Sahr, Kunert & Tambornino and Michael E. Skindrud, Minneapolis, for respondent Fuhrman, et al.

Peterson, Holtze & Treat, Minneapolis, for respondent Claude Sinnen, et al.

James D. Farrell, pro se.

Linda Marie Farrell Wilson, pro se.

Sachs, Latz & Kirshbaum, Minneapolis, for respondents.

Heard before PETERSON, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

This is a declaratory judgment action seeking to establish insurance coverage under a policy issued to a Minnesota resident by an Iowa insurance company registered to do business in Minnesota. The company is presently in receivership in Iowa. The district court held that it had jurisdiction to try the action despite the existence of an order of the Iowa receivership court purporting to enjoin all claimants from commencing actions against the company in any other court without first obtaining permission from the receiver. No permission had been given as to this action. We affirm.

On August 14, 1974, Linda M. Farrell purchased an automobile from her father, James Farrell. Prior to the sale, Mr. Farrell had carried a policy of insurance on the automobile with United America Insurors (United). Under this policy, coverage was

in effect with respect to Mr. Farrell and members of his household only as long as he owned the subject automobile. It is undisputed that Linda was not a member of her father's household when the sale occurred.

Plaintiff alleges, however, that Mr. Farrell made arrangements with his insurance agent, Claude Sinnen, to have the policy switched to his daughter at the time of the sale. It appears that Linda made a special additional payment to her father as consideration for the remaining coverage under the policy. In spite of alleged assurances from the insurance agent, the necessary change in coverage was never carried out.[1]

Eleven days after its purchase, the Farrell automobile was involved in an accident while being driven by Jeffrey Fuhrman, with the consent of Linda Farrell. The car struck and killed Mark P. Olson, a pedestrian. On September 22, 1975, a wrongful death action was commenced by the trustee for Olson's next of kin, naming Jeffrey Fuhrman and Linda Farrell as defendants.

Fuhrman and Farrell tendered the defense of this action to United on December 29, 1975, believing that coverage was in effect as previously described. At that time, however, United was insolvent and had been placed in receivership in Polk County, Iowa. In accordance with Iowa law, the Iowa state insurance commissioner was appointed as the receiver for United. The receiver refused the tender of defense made by Fuhrman and Farrell on the ground that there was no coverage available to either of them under the policy. At the time of the receiver's action, there was in effect an order of the District Court of Polk County, Iowa, enjoining all persons with claims against United from seeking adjudication of their claims in any court other than the Iowa court.

After United declined Fuhrman's tender of defense, his claim was referred to the Minnesota Insurance Guaranty Association (association).[2] Like United, the association concluded that Fuhrman was not covered by the United policy at the time of the accident and accordingly declined the tender of defense. Thereafter, Fuhrman began this action in Minnesota district court, seeking a declaratory judgment on the issue of coverage under the United policy.[3] The named defendants include United, its agent Claude Sinnen, James and Linda Farrell, and the trustee of the decedent's estate.[4] United moved to be dismissed from Fuhrman's action on the theory that the Minnesota court lacked personal jurisdiction over United, that the Iowa court's injunction barred any action against United in Minnesota, and that any claim against the association could be adjudicated without United's presence as a party defendant. United's motion was denied by the district court. The issues on appeal are thus:

(1) Does the Minnesota district court have in personam jurisdiction over United?

(2) Does the injunction issued by the Iowa court preclude an action in a Minnesota district court?

(3) What is the effect of the Minnesota Insurance Guaranty Association Act on this case?

1. The first issue is simply disposed of. Contrary to the contention of United, the appointment of a liquidating receiver does not terminate the corporate existence of the insurance company. 2 Clark, Receivers (3 ed.) § 542. United is registered to do business in Minnesota. Under the provisions of Minn.St. 543.19, subd. 1(b), it is subject to the jurisdiction of

---

1. Had the requested change in coverage been carried out, the insurance policy would have remained in effect until October 17, 1974.

2. The Minnesota Insurance Guaranty Association is established by statute, Minn.St. c. 60C. One of the stated purposes of the statute is to provide a mechanism for payment of covered claims and avoid financial loss to persons with unpaid claims against insolvent insurers.

3. In the declaratory judgment action, Fuhrman is represented by his own insurance carrier, Security Mutual Casualty Company.

4. On August 5, 1977, the district court granted Fuhrman leave to serve process on the Minnesota Insurance Guaranty Association as an additional defendant.

the Minnesota courts. Personal service was made on United in Iowa, and United has raised no objection to the validity of that service. Consequently, there can be no question that the district court had jurisdiction over United.

2. United contends that the order of the Iowa court precludes a Minnesota court from proceeding with this action. The order of the Iowa court is phrased in the language of an injunction as follows:

"1. *Any and all creditors, claimants or policy holders,* including all persons or entities claiming under bonds, reinsurance or other insuring commitments, be and they *are enjoined from commencing actions or proceeding further in the Courts to enforce their claims* of any kind of nature, in any way connected with the business of United America Insurors, whether against United America Insurors, the Receiver, any policy holder or otherwise.

"2. That any and all claims should be filed with the Receiver and acted upon by him before any other proceedings are taken.

"3. *If any claimant,* after filing such a claim and being advised of the Receiver's action thereon, *so desires, he may seek permission of this Court to take other action.*" (Italics supplied.)

The language of the order appears to require that claims of any nature against United be presented to the receiver for adjudication. However, the question of whether the Iowa court's order has any effect outside the State of Iowa requires a brief digression into the law of receivership.

When a corporation is placed in receivership, the court which grants the remedy and appoints the receiver also receives by operation of law constructive possession of the corporate assets. This corpus of property is the receivership res. It is well settled that once the res comes within the possession of the court, no action of any kind may be maintained which would interfere with this possession. The court's powers over the property come into existence with the establishment of the receivership and need not be asserted in the form of an injunction. 2 Clark, Receivers (3 ed.) § 625.1. Any attempt to interfere with the court's possession of the res subjects the intervening party to the contempt sanction of the court. Id. § 627.

The crucial factor, however, is that not every suit brought against a receivership defendant is deemed to interfere with the res. The distinction is commonly made between the liquidation of a claim and the enforcement of the claim after it has been reduced to judgment. Thus, an action in personam to establish the extent of an insolvent's liability on a claim is held not to interfere with the receivership res. By the same token, any attempted attachment or levy against the res made in connection with a judgment is normally in rem and directly opposed to the court's dominion over the res. See, 2 Clark, Receivers (3 ed.) § 542; 65 Am.Jur.2d, Receivers, § 177; 75 C.J.S., Receivers, § 131b; *Calhoun v. Lanaux,* 127 U.S. 634, 8 S.Ct. 1345, 32 L.Ed. 297 (1888). Accordingly, an in personam action against the receivership defendant need not be brought in the receivership court.[5] In the present case, then, there is nothing in the law of receivership which would prevent Fuhrman from bringing this in personam action for a declaratory judgment against United in a Minnesota court. Similarly, Fuhrman could litigate the issue of damages in Minnesota; but any attempt to collect on an award of damages would necessarily threaten the receivership res and would thus require the approval of the Iowa court.

There remains, however, the question of the effect of the Iowa court's injunction on Fuhrman's Minnesota lawsuit. That is, while nothing inherent in the nature of a receivership prevents Fuhrman's suit, the Iowa court entered a specific in-

---

**5.** As a practical matter, most parties with claims against an insolvent choose to litigate all matters before the receivership court in or-

der to avoid the necessity of bringing several actions to collect on a single claim.

junction purporting to restrain all claimants from proceeding in other courts. Concerning the force of such an injunction, the Clark treatise makes the following observation (2 Clark, Receivers [3 ed.], § 625.2):

"In many orders appointing receivers we find statements to the effect that all creditors, stockholders, etc. 'are hereby enjoined and restrained from instituting or prosecuting any action at law or suit in equity against the defendant * * *.'

"It is rather apparent, however, that an injunction cannot be directed to other courts *or have the effect of closing other courts to ordinary actions in personam against the defendant.*"

The general rule is that an injunction operates in personam, and a court therefore may not enjoin persons who are not within its territorial jurisdiction. It appears that the basis for this rule does not lie in any lack of authority to issue an extraterritorial injunction. Rather, it is deemed inappropriate for a court to issue an injunction which it is unable to enforce because the persons affected are beyond the physical limits of the court's jurisdiction. Thus, it is clear that the sweeping terms of the injunction granted by the Iowa court were improper. The injunction attempts to reach all creditors and claimants, regardless of where they reside or whether they were ever subject to the personal jurisdiction of the Iowa court. See, e. g., Lewis and Spelling, Law of Injunctions, § 12; 1 Joyce, Injunctions, § 47a; *Guaranty Trust Co. of New York v. Fentress,* 61 F.2d 329 (7 Cir. 1932); *Gainsburg v. Dodge,* 193 Ark. 473, 101 S.W.2d 178 (1937); 43A C.J.S. Injunctions § 175b.

Even if we assume, however, that the Iowa court acted properly in issuing so broad an injunction, that fact does not affect the subject matter jurisdiction of a Minnesota court. It is well established that an injunction purporting to restrain the prosecution of a legal action in another jurisdiction operates in personam against individuals only. State sovereignty dictates that courts of different jurisdictions may not directly enjoin the actions of one another. Thus, there is nothing which operates as an absolute bar against a Minnesota court's willingness to adjudicate a legal claim which falls within the terms of an Iowa injunction. Instead, recognition of an injunction issued in another state is granted strictly as a matter of comity. Courts of the states are split in their views of foreign injunctions, with some espousing the notion of comity and others not. See, Annotation, 74 A.L.R.2d 828. The rule in Minnesota, however, is settled.

In *State ex rel. Bossung v. District Court,* 140 Minn. 494, 168 N.W. 589 (1918), the plaintiff brought a wrongful death action in Hennepin County for a car-train accident which had occurred in Nebraska. The defendant railroad subsequently began an action in Nebraska and procured an injunction restraining the continued prosecution of the Minnesota lawsuit. The Hennepin County District Court entered a stay, pending determination of the Nebraska suit. The plaintiff in the Minnesota action appealed to this court for a writ of mandamus directing the district court to proceed. In spite of the fact that the plaintiff was a Nebraska citizen, this court ruled that the Minnesota lawsuit should proceed. The court reasoned as follows (140 Minn. 498, 168 N.W. 591):

"* * * The injunction operates in personam upon the one to whom it is directed, and not upon the tribunal of the foreign state. Such tribunal is not directed to refrain and is not subject to control. * * * The party of whom the court has jurisdiction is bound by the commands of the injunction and against him the court may exercise such coercive measures as are appropriate and at its command. The Nebraska court by enjoining does not offend the Constitution. * * * We are not concerned with the propriety of the Nebraska action. We are concerned only with the propriety of the act of the Hennepin court in refusing to proceed. If one of our citizens was the plaintiff in a Nebraska cause of action, * * * it does not seem that we ought to refuse his case, though he was re-

848

strained by a Nebraska court. If we should not, it does not seem that the privileges and immunities clause permits a different rule applicable to a citizen of another state. If we require our citizens to refrain from proceeding in our courts because enjoined by the courts of another state, such courts are given quite substantial control over our litigation. That they may enforce their injunctions in personam no one questions."[6]

We have followed the rule of the *Bossung* case on numerous occasions. See, *Hoch v. Byram,* 180 Minn. 298, 230 N.W. 823 (1930); *State ex rel. Collins v. District Court,* 176 Minn. 636, 222 N.W. 931 (1929); *Hovel v. Minneapolis & St. L. R. Co.,* 165 Minn. 449, 206 N.W. 710 (1926); *Union Pacific R. Co. v. Rule,* 155 Minn. 302, 193 N.W. 161 (1923). On the facts of the case at bar, we find nothing which persuades us to abandon our well-established rule.

United also argues that the Iowa injunction must be recognized under the full-faith-and-credit clause of the United States Constitution. It is beyond dispute, however, that in order for full faith and credit to be accorded a foreign judicial proceeding, it must appear that the foreign tribunal had jurisdiction over both the parties and the subject matter of the litigation. See, *Roche v. McDonald,* 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365 (1928); 50 C.J.S., Judgments, § 889c. In this case, the Iowa court plainly did not have personal jurisdiction over Fuhrman when the injunctive order was entered. Accordingly, the decree is not one to which full faith and credit must be given by the courts of Minnesota.

3. Finally, United argues that the Minnesota Insurance Guaranty Association Act, Minn.St. c. 60C, obviates the necessity of having United as a party to the Minnesota action. In general, the Guaranty Act is designed to compensate Minnesota residents who have unpaid claims against insolvent insurance companies doing business in this state. Compensation is availa-

ble, however, only for those claims which are covered by the act. The term "covered claims" is defined, in pertinent part, as follows (Minn.St. 60C.09, subd. 1):

"Subdivision 1. A covered claim is any unpaid claim, including one for unearned premium, which:

    \*     \*     \*     \*     \*     \*

"(c) *Has been approved* in the liquidation of the insurer issuing the policy, carried out under chapter 60B or under similar laws of another state or country; and

"(d) Is made by:

"(i) A policyholder, or an insured beneficiary under a policy, who, at the time of the insured event, was a resident of this state; or \* \* \*." (Italics supplied.)

Thus, in order to gain entitlement to a recovery under the act, a claimant must have his claim approved by the receiver or other officer in charge of winding up the company's affairs. Here the receiver rejected Fuhrman's claim. As a result, United argues, its presence as a litigant in this case is unnecessary. At oral argument, counsel for Fuhrman indicated his willingness to have United dismissed on the condition that the association waive any defense concerning the Guaranty Act's coverage of Fuhrman's claim. United's counsel—who also represented the association—refused to accept this condition. Thus, we find it absolutely necessary for United to remain in this litigation as a party defendant. Otherwise, Fuhrman would have no assurance that a Minnesota court will ever reach the merits of his claim, given our doubts that his claim is a "covered claim" under the Guaranty Act.

Since Minnesota courts can assert in personam jurisdiction over United and are not barred by the Iowa injunction, we perceive no reason to prohibit the district court from adjudicating Fuhrman's claim under the United insurance policy.

Affirmed.

---

6. The fact that the Minnesota action was initiated before the Nebraska action was not a factor in the court's decision.