610 P.2d 1202

**John M. CAPO, Plaintiff-Appellant,**

v.

**CENTURY LIFE INSURANCE COMPANY and National Old Line Life Insurance Company, Defendants-Appellees.**

**NATIONAL OLD LINE INSURANCE COMPANY, an Arkansas Corp., and Lloyd B. McCain, as Trustee, Plaintiffs-Appellees,**

v.

**John N. CAPO, aka John Capo and Florence Capo, his wife, and Teleradio Supply Company, Inc., Defendants-Appellants.**

**No. 12175.**

Supreme Court of New Mexico.

May 6, 1980.

Rehearing Denied May 21, 1980.

Threet, Threet, Glass & King, Martin E. Threet, Albuquerque, for appellants.

Modrall, Sperling, Roehl, Harris & Sisk, John R. Cooney, Albuquerque, for appellees.

## OPINION

EASLEY, Justice.

Our opinions filed on November 16, 1979 and March 17, 1980 are withdrawn.

Capo sued Century Life Insurance Company (Century) and National Old Line Insurance Company (National) for a declaratory judgment to determine the rights and liabilities of the parties arising from a note, a deed of trust, an agreement to purchase life insurance and an insurance policy. National filed a separate suit against Capo, his wife, and his corporation, Teleradio Supply Co., Inc., to foreclose on the deed of trust because of default in payments. The cases were consolidated and a non-jury trial was held in which the trial court entered judgment in favor of National and ordered a foreclosure and sale of the real property. We reverse and remand.

Four main issues are raised by this appeal: (1) whether Capo was estopped from raising the illegality of an agreement between Capo and Century in which Capo was unlawfully coerced into purchasing a life insurance policy from Century as security on the promissory note and deed of trust; (2) whether the contract is enforceable despite its partial illegality; (3) whether Section 59–11–8, N.M.S.A.1978, places a limit on damages that can be recovered for the illegal coercion of the purchase of life insurance; and (4) whether the full faith and credit principle respecting foreign judgments forecloses action by our courts.

Capo purchased the life insurance policy in 1965 from Century as security, on the promissory note and deed of trust issued to Century, for a loan of $35,000.00 to Capo. The agreement called for periodic payments of interest only on the loan and for the accumulated cash value of the policy to be used to pay off the principal amount when the loan fell due in 1985. The policy provided that Century would deduct from the cash value of the policy any insurance premium payments that were in default.

In August 1969, Century went into receivership in Texas under Texas law. In November 1969, in the receivership proceeding, National agreed to reinsure certain Century policies, including Capo's, and in return was assigned various Century assets, including the Capo promissory note and deed of trust. Capo was notified that he had an option to elect reinsurance pursuant to the agreement or to reject reinsurance and seek enforcement of any claims he had against the receiver in Texas. The option

ended on September 30, 1970. The purpose of this deadline was to afford National notice of the nature of the assets and liabilities that it was assuming.

Before the deadline for claims was reached, National completed the reinsurance arrangement on Capo's policy. Capo stopped all payments of interest on the loan and insurance premiums in December, 1969. He complained to National about the imposition of liens on the cash value of his policy. He did not make a claim against Century, nor did he give notice to National of a claim or make a claim to it regarding the illegality of the insurance policy before the deadline.

On the date set for the deadline, Capo sued Century and National in the District Court of Bernalillo County. He alleged that a lien had been improperly imposed against the cash value of the insurance policy. He made no allegations in his complaint concerning either the illegality of the insurance policy, based on the coercive manner in which it was sold to him, or his right to the return of insurance premiums paid. At the time of his suit, Capo had ceased to pay the premiums on the policy and the interest payments on the loan. But National, in accord with the terms of the contract, paid Capo's delinquent premium payments from the cash value of the policy until the amount was exhausted. The policy lapsed on February 1, 1974. It was shortly after that date that Capo first raised the issue of illegality of the contract. This was the first indication in the record that he was aware of its illegality.

The trial court held that National relied on Capo's failure to give notification of rejection of reinsurance; and the court concluded that Capo's actions estopped him from raising the illegality of the contract. That court further concluded that Section 59–11–8 limits recoverable damages in such cases to "actual damages" and that Capo has suffered no such damages because the insurance policy sold to him remained in force over the years and the premiums charged were competitive with those of other companies. National was also granted a decree of foreclosure on Capo's real estate.

Capo appealed, claiming that the violation of Section 30–16–15, N.M.S.A.1978, by Century in illegally coercing him to purchase life insurance precludes Century's assignee, National, from raising the defense of estoppel. He also asserts that Section 59–11–8 is not applicable to limit his recovery because it applies solely to property insurance and not life insurance.

■ It is clear that this contract is illegal. Section 30–16–15 makes it specifically illegal for a lender of money to coerce the purchase of insurance from a particular broker. The record leaves no doubt that Century made the execution of an insurance contract by Capo a condition precedent to granting the loan.

■ It is well established that a party cannot maintain an action if he must rely on a violation by himself of some statutory regulation in order to establish his cause of action. *Kaiser v. Thomson*, 55 N.M. 270, 232 P.2d 142 (1951); *Desmet v. Sublett*, 54 N.M. 355, 225 P.2d 141 (1950); *Fleming v. Phelps-Dodge Corporation*, 83 N.M. 715, 496 P.2d 1111 (Ct.App.1972); *Maynerich v. Little Bear Enterprises, Inc.*, 82 N.M. 650, 485 P.2d 984 (Ct.App.1971). This is particularly true as regards the party upon whom the statute imposes the penalty. *Maynerich, supra*.

This principle involves a well recognized public policy that no court will lend its aid to persons who base their causes of action upon immoral or illegal acts. *Desmet, supra*. The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement. *Id.*

■ Where the parties to an illegal contract are in *pari delicto*, the court will usually leave them where it finds them and refuse relief to both. However, where one is at fault but not the other, the party at fault under the statute is not entitled to gain an advantage by his own act. *Southern States Life Insurance Co. v. McCauley*, 81 N.M. 114, 464 P.2d 404 (1970).

■■ Where the law creates an illegality that is designed for coercion of one party and the protection of another, the party so protected may have his remedy even though the transaction is completed. *Thomas v. City of Richmond*, 79 U.S. 349, 20 L.Ed. 453 (1870). It is plain in our case that the fault lies with Century and not with Capo. To permit National, Century's assignee, to retain the premiums paid would in effect validate the illegal contract, nullify the statutory penalty and permit National to take advantage of the criminal act. *See Forrest Currell Lumber Company v. Thomas*, 81 N.M. 161, 464 P.2d 891 (1970). We hold this to be impermissible. "We find no support in the authorities, not [sic] in morals for the [construction] that one may wrong another, and then set up the wrong as a defense, when called to account." *Chaves v. Lucero*, 13 N.M. 368, 383, 85 P. 233, 237 (1906).

■ National claims that Capo's failure to proceed under the Texas receivership proceeding and his other actions create an estoppel. New Mexico case law makes it clear that estoppel by conduct arises when a party has been induced by the conduct of the other to do, or forebear from doing, something he would not have done but for such conduct. *See First State Bank at Gallup v. Clark*, 91 N.M. 117, 570 P.2d 1144 (1977). There is no estoppel unless the person, acting in reliance on acts or conduct of another, has been induced to take a position to his prejudice or detriment. *State Farm Mutual Automobile Ins. Co. v. Gonzales*, 83 N.M. 296, 491 P.2d 513 (1971).

■ The essential elements of equitable estoppel as related to the party estopped (Capo) are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party (National); and (3) knowledge, actual or constructive, of the real facts (by Capo). As related to National which claims estoppel, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question (the illegality of the contract); (2) reliance upon the conduct of the party estopped (Capo); and (3) action based thereon of such a character as to change its position prejudicially. *In Re Williams' Will*, 71 N.M. 39, 376 P.2d 3 (1962).

■ The key factor in this case is the illegality of the contract. There is no showing by National that Capo knew the contract to be illegal when he refrained from going to Texas to contest the reinsurance program. It is not alleged that Capo knew of the illegality at any time before all the accumulated cash value had been exhausted by payment of premiums and the policy had lapsed.

■ To invoke the doctrine of estoppel by silence it must first be established that the one against whom the doctrine is being invoked had a duty to speak. *Peltz v. New Mexico Dept. of Health & Soc. Serv.*, 89 N.M. 276, 551 P.2d 100 (Ct.App.1976). It must be shown that the party maintaining silence knew that the other party was relying upon that silence. *Id.* Silence as to Capo's *claim of illegality* is the silence in question here. No duty for him to speak has been proven.

Further, it is not claimed by National that there was any limitation of time in the insurance contract or in the law within which Capo was mandated to raise the issue of illegality. He raised the issue in defense of the foreclosure action against his property.

Under these circumstances the elements of misrepresentation or concealment of material facts by Capo, intention to induce action by National and knowledge of the real facts have not been shown. Furthermore, National has not met the test of showing the essentials of lack of knowledge of the true facts by National, reliance on Capo's conduct as regards the question of illegality, and action based thereon. *In Re Williams' Will, supra*. There is no estoppel. We reverse the decision of the trial court on this issue.

■ Also, it is generally held that validity cannot be given to an illegal contract on the principle of estoppel. *See Sumner Development Corporation v. Shivers*, 517 P.2d 757 (Alaska 1974); *City Lincoln-Mercury Company v. Lindsey*, 52 Cal.2d 267, 339 P.2d 851 (1959); *Cooper v. Baer*, 59 Wash.2d 763, 370 P.2d 871 (1972). Even if we reached the point of considering the equities as between these parties, the balance is strongly in Capo's favor.

As to the second issue, whether any part of the contract is enforceable despite its partial illegality, this Court squarely addressed this point in *Forrest Currell, supra.* This Court there held that although an insurance requirement in a contract was illegal, because of the same statute as here, this did not make the note and mortgage in question unenforceable. The Court in *Forrest Currell* stated that the statute must be examined as to its subject matter, its object and purpose, the wrong and evil which it intends to remedy and prevent, and the class of persons sought to be controlled. If from such examination it appears that the manifest intention of the statute was *not* to make a contract void, that effect must be given. *Id.* at 164, 464 P.2d at 894.

■ In addition, where a contract is made up of several agreements, one of which is illegal, if the illegal part can be eliminated without destroying the symmetry of the contract as a whole, such will be done and the remainder will be enforced. *Id.* at 165, 464 P.2d at 895. *See also Ritchey v. Gerard*, 48 N.M. 452, 152 P.2d 394 (1944); 17 C.J.S. *Contracts* § 289c (1963).

■ In the case at bar, the violated statute does not declare a coerced contract void. We cannot read the statute to mean that its intent is to void contracts. And in this case, as in *Forrest Currell*, the illegal portion of the contract can be separated from the entire contract without destroying the contract's symmetry. The life insurance provision is a separable and different part of the contract from the loan agreement. Capo was and is still liable for the loan made to him. Foreclosure and sale of his property was the appropriate remedy for the trial court to grant National since this property secured the loan and Capo had ceased making the requisite payments on it.

The life insurance provision in this contract was illegal. The parties here were not in *pari delicto*. If they had been, this Court would be faced with a different situation and different relief would be appropriate. *See Southern States Life Insurance Co., supra; Schnoor v. Griffin*, 79 N.M. 86, 439 P.2d 922 (1968); *Hogue v. Superior Utilities*, 53 N.M. 452, 210 P.2d 938 (1949).

■ As to the third issue, National's claim that Section 59–11–8 places a limit of "actual damages" on recovery for coercion of the purchase of *life insurance* is not persuasive. By its plain terms the statute refers only to "insurance on property" and "policy of insurance . . . covering such property." At no point does it make reference to life insurance. The only tie between the two statutes is that Section 59–11–8(I) specifies that the penalties provided in Section 30–16–15 shall also apply for violations of the former statute. Then, it states that any lender who violates "this section" (obviously Section 59–11–8) shall be liable for the amount of his "actual damages as a result of coercion prohibited by *this section*." (Emphasis added.) To sustain National's position here requires an unjustified leap in logic. We reverse the trial court and hold that the section does not apply.

*Forrest Currell* is precisely on point on the issue of the relief to be awarded Capo. That case held that the amount of premiums paid were to be refunded to the insured. We reverse the trial court and hold that Capo is entitled to judgment for the amount he paid in insurance premiums, plus interest. We deny Capo's claim for a setoff against the amount he owes National on the judgment foreclosing the mortgage. To do otherwise would constitute establishing the priority of Capo's claim.

National claims that the Texas court has jurisdiction of this dispute for all purposes. On the contrary, our court had jurisdiction over the parties and the subject matter.

We do not deal with the priority of claims. Capo is only given a right to prove his claim in judgment form. We do not reach the issue of parity of treatment of creditors or the lack thereof. We do not question that the title to all of Century's property was vested in the Texas receiver. We do not establish a lien on any property and do not deal directly with it. "The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." *Morris v. Jones*, 329 U.S. 545, 549, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1947). *See Clark v. Williard*, 292 U.S. 112, 54 S.Ct. 615, 78 L.Ed. 1160 (1934); *Riehle v. Margolies*, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929); *Fuhrman v. United America Insurors*, 269 N.W.2d 842 (Minn. 1978); *Dean Construction Co. v. Agricultural Ins. Co.*, 22 A.D.2d 82, 254 N.Y.S.2d 196 (1964).

We find no substance to National's allegation of laches.

This case is remanded for entry of judgment as herein indicated.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI and FELTER, JJ., concur.