669 P.2d 259

**Shan EALY, Individually and Personal Representative of Ted Ealy, Deceased, Plaintiff-Appellant,**

v.

**James SHEPPECK, M.D., Defendant-Appellee.**

No. 5962.

Court of Appeals of New Mexico.

April 12, 1983.

Opinion on Rehearing April 29, 1983.

Certiorari Quashed Sept. 7, 1983.

Richard V. Earl, Stephen F. Lawless, McCulloch, Grisham & Lawless, P.A., Albuquerque, for plaintiff-appellant.

W. Mark Mowery, Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee.

## OPINION

WALTERS, Chief Judge.

■ Defendant's motion for summary judgment or for dismissal of plaintiffs' claim was granted by the trial court. The parties agree that under § 41–5–13, N.M.S.A.1978 (1982 Repl.Pamph.), plaintiff filed her malpractice claim against defendant too late, unless the statute was somehow tolled. She contends that there was a tolling either by defendant's fraudulent concealment, continuing tortious conduct, or false misrepresentation. In order to defeat defendant's prima facie showing that the limitation period had run, plaintiff had the burden of

showing the existence of an issue of material fact concerning tolling. *Kennedy v. Lynch,* 85 N.M. 479, 513 P.2d 1261 (1973); *Tenorio v. Cohen,* 96 N.M. 756, 635 P.2d 311 (Ct.App.1981). We affirm the trial court's alternative grant of summary judgment in favor of defendant and dismissal of the claim.

Defendant, a radiologist, was asked by decedent's doctor to interpret a urogram x-ray taken of decedent, on March 14, 1978. He read it as reflecting a normal urogram.

In January 1979 another urogram was made and interpreted by a different radiologist. It showed a mass in decedent's right kidney. A cancerous tumor was removed approximately ten days later; decedent died in July, 1979. Plaintiff filed an application alleging malpractice against defendant with the New Mexico Medical Review Commission on July 14, 1981; a district court suit was instituted on November 2, 1981 alleging that defendant negligently failed to diagnose decedent's condition in March, 1978. If the statute was not tolled by reason of defendant's misreading of the urogram in March 1978, or of his fraudulent concealment of a cancerous condition found by him in March 1978, or of a false or negligent representation regarding a cancerous condition in March 1978, the filings with both the Commission and the district court in July and November of 1981, more than three years after defendant's reading of the first urogram, were untimely. Section 41–5–3(C), N.M.S.A.1978.

There was a complete absence of any evidence on defendant's motion for dismissal or summary judgment that common custom and practice in the medical community requires a radiologist-specialist to periodically or regularly re-read or review diagnostic films such as would support plaintiff's claim that defendant should be held liable on a theory of continuing tort.

Plaintiff suggests that defendant's several readings of decedent's lung x-rays, made in October and December 1978, and of a later chest series made over a 3-month period in 1979 (all at the request of treating physicians) show defendant's habit of comparing past and current films. Plaintiff ignores the facts that defendant was consulted by referring treating physicians only for several *chest* x-rays of decedent during that period, and that defendant never was requested to nor did he take or read another kidney x-ray of decedent after the March 1978 urogram.

■ Defendant was not a treating physician; it is undisputed that he was requested in March 1978 by decedent's primary physician to do a specialized radiologic renal study to assist that physician in treating decedent. In the absence of New Mexico cases addressing the issue of continuing tort as applicable to a diagnostic specialist's duty to the patient referred to him, we agree with the discussion in *Davis v. City of New York,* 38 N.Y.2d 257, 379 N.Y.S.2d 721, 342 N.E.2d 516 (1975), that defendant rendered "intermittent rather than continuous medical services" to decedent with respect to his interpretation of the urogram. Consequently, because there was no continuous medical service rendered to decedent by defendant, the statute governing the malpractice alleged commenced running when defendant interpreted the particular kidney x-ray, in March 1978. *See also Russo v. Diethrich,* 126 Ariz. 522, 617 P.2d 30 (1980) (continuity of treatment necessary to bring "continuous tort" theory into play); *Bixler v. Bowman,* 94 Wash.2d 146, 614 P.2d 1290 (1980) ("continuous and substantially uninterrupted course of treatment *for a particular illness or condition*" (our emphasis) necessary to toll statute until that treatment terminated); and *McQuinn v. St. Lawrence County Laboratory,* 28 A.D.2d 1035, 283 N.Y.S.2d 747 (N.Y.App.Div.1967) (one biopsy diagnosis by examining laboratory is not "continuous treatment" as would toll statute on continuing tort theory).

Plaintiff produced absolutely nothing at the hearing on defendant's motion to show that the 1978 urogram was misread. If defendant's interpretation of that urogram was not incorrect, and there is no evidence upon which either we or the trial court could conclude otherwise, the claims of

concealment and misrepresentation are never reached.

■ Without any evidence to support the claim of misreading or to sustain any of appellant's tolling theories, the trial court correctly decided that there was no material fact suggesting that the statute of limitations had not run. The grant of defendant's motion is AFFIRMED.

WOOD and NEAL, JJ., concur.

## OPINION ON REHEARING

WALTERS, Chief Judge.

Plaintiff, on motion for rehearing, calls attention to our statement in the original opinion that defendant did not take or read another kidney x-ray of decedent after the March 1978 urogram. She points out that Dr. Sheppeck made a second urogram in March 1979, and reported that the right kidney was absent in the x-ray. It had, of course, been removed in January 1979.

Our earlier opinion should have added that no other kidney x-ray was taken or read by defendant after March 1978 and before the kidney was removed.

We are not told the significance of the fact that Dr. Sheppeck read another urogram after the kidney removal. In her brief in chief, plaintiff contended that "the tort continued until January 15, 1979." How does our failure to mention the urogram read by defendant in March 1979, *after* the kidney had been removed, affect our holding that defendant did not render continuing treatment of decedent with respect to interpreting the March 1978 urogram?

Moreover, what would a *comparison* of the two x-rays have shown, if a comparison had been done, other than that the kidney was present in the 1978 x-ray and absent in 1979? Such a comparison hardly establishes a practice of re-reading diagnostic x-ray films when the organ to be diagnosed does not exist beyond the first x-ray.

The other points raised by plaintiff on rehearing are mere re-argument of alleged disputed facts. We repeat, no evidence, other than plaintiff's hearsay assertions that another doctor would testify that the 1978 x-ray had been improperly interpreted, was offered by plaintiff at the motion for summary judgment or to dismiss. The suit, on its face, was untimely filed. The cause of action could be saved only by showing: (1) that defendant was engaged in a tort continuing at least until July 1978, or (2) that defendant misread the March 1978 urogram, or (3) that defendant fraudulently concealed or negligently represented a cancerous condition existing in March 1978. The first condition was not shown; either of the circumstances of the third condition cannot be considered unless there is a genuine issue raised concerning the second condition. Plaintiff presented no admissible, acceptable or satisfactory evidence at the motion hearing to create an issue of fact regarding misinterpretation of the 1978 urogram, so as to toll the statute.

The purpose of a motion for rehearing is not to go over the same ground already presented on the main appeal in hopes of wearing down an appellate court. The judgment is again AFFIRMED.