698 P.2d 442

**James Scott IRVINE, Plaintiff-Appellant,**

v.

**ST. JOSEPH HOSPITAL, INC., Marvin Sachs, Doyle Simmons, M.D., H.J. Murrell, M.D., and X-Ray Associates, P.A., Defendants-Appellees.**

**Nos. 7651, 7713.**

Court of Appeals of New Mexico.

Oct. 23, 1984.

Steven E. Schonberg, Paul Livingston, Steven E. Schonberg, P.C., Louis S. Marjon, Albuquerque, for plaintiff-appellant.

Carl J. Butkus, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendant-appellee St. Joseph Hosp., Inc.

J.E. Casados, Ellen M. Kelly, Gallagher & Casados, P.C., Albuquerque, for defendant-appellee Marvin Sachs.

W. Robert Lasater, Jr., Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees Doyle Simmons, M.D. and H.J. Murrell, M.D.

Bruce D. Black, Ruth S. Musgrave, Campbell, Byrd & Black, P.A., Santa Fe, for defendant-appellee X-Ray Associates, Inc.

**OPINION**

WOOD, Judge.

Although plaintiff's theories for obtaining damages from defendants were variously worded, there is no contention that the theories were other than malpractice claims. *See* NMSA 1978, § 41–5–3(C) (Repl.Pamp.1982). The trial court granted summary judgment in favor of defendants on the basis that the statute of limitation had run. Plaintiff appeals. All statutory references are to NMSA 1978. Section 41–5–13 provides: "No claim for malpractice ... may be brought against a health care provider unless filed within three years after the date that the act of malpractice occurred * * *." The issue is the meaning of this statute. We (1) dispose of procedural matters, and (2) decide when the limitation period began to run.

**Procedural Matters**

 ▪ (a) Plaintiff received radiation treatments which he alleged ultimately caused a bowel injury. The treatments were received between February 21, 1978, and September 20, 1978. The original complaint was filed November 29, 1982. If any act of malpractice occurred, it occurred not later than September 20, 1978. The original complaint was filed more than three years later. Defendants made a prima facie

showing that the limitation period had expired; plaintiff does not contend otherwise. The burden was on plaintiff to show there was an issue as to whether the limitation period had not expired when he filed his complaint. *Ealy v. Sheppeck,* 100 N.M. 250, 669 P.2d 259 (Ct.App.1983).

(b) In the trial court plaintiff claimed that the limitation period had been tolled by fraudulent concealment. *See Keithley v. St. Joseph Hospital,* 102 N.M. 565, 698 P.2d 435 (Ct.App.1984). The trial court ruled there was no material issue of fact as to tolling. *See Lent v. Employment Security Commission of the State of New Mexico,* 99 N.M. 407, 658 P.2d 1134 (Ct. App.1982). Plaintiff does not claim on appeal that there was a material, factual issue as to tolling which would make the summary judgment erroneous.

(c) On appeal, plaintiff contends the trial court applied Section 41–5–13 literally and thus erroneously. This issue, as to the meaning of the statute, was ruled on by the trial court and is the issue decided in this appeal.

■ (d) On appeal, plaintiff contends that, if we do not adopt one of his suggested meanings of the statute (identified in the next issue), the statute is unconstitutional. See, however, *Armijo v. Tandysh,* 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981). No such claim was made in the trial court; therefore, it is not subject to review on appeal. NMSA 1978, Civ.App.R. 11 (Repl. Pamp.1984); *In re Reilly's Estate,* 63 N.M. 352, 319 P.2d 1069 (1957). Plaintiff recognizes that his constitutional claims are raised for the first time in his appeal but, nevertheless, asserts that the claims should be considered on the basis of fairness. His argument relies on the "fundamental rights" language of Civ.App.Rule 11. Use of the words "fairness" and "fundamental rights" does not change the claim made on appeal. That claim is that, if the limitation period expired before the injury developed or manifested itself, the statute violated either due process or equal protection. Such a claim will not be considered because it was not raised in the trial court. *Adop-*

*tion of Doe,* 89 N.M. 606, 555 P.2d 906 (Ct.App.1976).

## When the Limitation Period Began to Run

■ Section 41–5–13, the legislatively-enacted limitation period for medical malpractice claims, provides that the claim must be filed "within three years after the date that the act of malpractice occurred * * *." The statutory language is not ambiguous. The limitation period began to run from the date of the occurrence of the alleged malpractice. *Keithley v. St. Joseph's Hospital; see also Armijo v. Tandysh; Roybal v. White,* 72 N.M. 285, 383 P.2d 250 (1963).

Other limitation statutes provide that the limitation period begins to run from the date of the injury. The limitation period under the Tort Claims Act, Section 41–4–15(A), refers to the date of occurrence resulting in loss, injury or death. *Aragon & McCoy v. Albuquerque National Bank,* 99 N.M. 420, 424, 659 P.2d 306 (1983), states the "plain language of the statute indicates that the period of limitations began to run when an 'occurrence resulting in loss' took place. Until such a loss took place, the statute of limitations could not begin to run." The limitation period under the Wrongful Death statute, Section 41–2–2, is "three years after the cause of action accrues. The cause of action accrues as of the date of death." *See Stang v. Hertz Corp.,* 81 N.M. 348, 467 P.2d 14 (1970). The general limitation statutes for personal injury, Sections 37–1–1 and 37–1–8, provide that the action must be filed within three years of the injury. *Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (Ct.App.1977).

Section 41–5–13 does not contain the "injury" language of Sections 41–4–15(A), 41–2–2 and 37–1–8. *Crumpton v. Humana, Inc.,* 99 N.M. 562, 661 P.2d 54 (1983), recognized this difference.

Although Section 41–5–13 differs from other limitation statutes, plaintiff contends we should hold, as a minimum, that the limitation period of Section 41–5–13 does not begin to run until an injury manifests

itself in a physically objective manner and is ascertainable. *See Peralta v. Martinez.* Plaintiff also contends that we should go further and hold that more than a physically objective and ascertainable injury is required to start the running of Section 41–5–13. Plaintiff would have us hold that the limitation period of Section 41–5–13 does not begin to run until the injury is discovered. An inference from plaintiff's briefs is that the limitation period of Section 41–5–13 should not begin to run until plaintiff knows the cause of a discovered injury.

Inasmuch as Section 41–5–13 is not worded in terms of injury, discovery or cause, on what basis could any one of these terms be included in the meaning of the statute? "[C]ourts are not free to construe unambiguous legislation; they may not read language into a statute that is not there, particularly if it makes sense as written." *Hansman v. Bernalillo County Assessor,* 95 N.M. 697, 700, 625 P.2d 1214 (Ct.App. 1980). Plaintiff does not contend that Section 41–5–13 is ambiguous; he does not assert that his desired meaning of the statute be achieved by the device of construing an ambiguous statute. Plaintiff would have us adopt one of his suggested meanings of the statute simply by ignoring the statutory wording.

In this paragraph we identify and respond to plaintiff's arguments.

(a) Plaintiff states "[t]he requirement that an injury must be present before the cause of action accrues is not a requirement of legislative rule or statute * * *." This disregards statutory language. We have referred to statutes where the limitation period runs from the injury, and pointed out that running of the limitation period of Section 41–5–13 starts from the occurrence, and not the injury. .

■■■ (b) "[T]here is no requirement to defer to the legislature in determining whether a late accruing claim should be barred by the narrowest possible interpretation of the New Mexico Malpractice statute of limitations." Because Section 41–5–13 is not ambiguous, we do not construe the statute; rather, our duty is to interpret the statute as enacted. *Cf. Davies v. Boyd,* 73 N.M. 85, 385 P.2d 950 (1963). Statutes are to be given effect as written. *Fort v. Neal,* 79 N.M. 479, 444 P.2d 990 (1968). The meaning of a statute is to be ascertained primarily from its terms. *Southern Union Gas Co. v. New Mexico Public Service Commission,* 82 N.M. 405, 482 P.2d 913 (1971), *overruled on other grounds* in *De Vargas Savings & Loan Association of Santa Fe v. Campbell,* 87 N.M. 469, 535 P.2d 1320 (1975). "Hence, the oft repeated maxim that 'a statute means what it says.'" *Hendricks v. Hendricks,* 55 N.M. 51, 65–66, 226 P.2d 464 (1950). As written, Section 41–5–13 means that the limitation period starts to run from the date of the act of malpractice. This interpretation is not a "deferral" to the legislature, but a recognition of this court's duty to interpret the statute as enacted. *Cf. McCurry v. City of Farmington,* 97 N.M. 728, 643 P.2d 292 (Ct.App.1982).

■■■ (c) The courts have the power "to interpret rules of procedure when those rules come into question * * *." Statutes of limitation are procedural in the sense that limitation statutes are governed by the law of the forum in a conflict of laws situation. *Sierra Life Insurance Co. v. First National Life Insurance Co.,* 85 N.M. 409, 512 P.2d 1245 (1973); *Slade v. Slade,* 81 N.M. 462, 468 P.2d 627 (1970). We assume this "interpretation" claim differs from the claim discussed and decided in (b) above. Plaintiff may be arguing, on the basis that limitation statutes are procedural, that the legislature has no power to enact a procedural statute because such is an invasion of the judicial power. *See Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976). Plaintiff cites no decisions that hold that a legislatively-enacted limitation statute is an unconstitutional encroachment on the judicial power. *Terry v. New Mexico State Highway Commission,* 98 N.M. 119, 123, 645 P.2d 1375 (1982) states "it is not a judicial function to set appropriate limitations periods." Assuming, but not deciding, that limitation statutes encroach upon the judi-

cial power, the limitation statute is to be given effect until it conflicts with a supreme court rule. *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.1978).

(d) Plaintiff asserts that it is just and proper to begin the limitation period with the manifestation of the injury when the injury is caused by radiation and is a latent, slow-maturing injury. We have pointed out that the limitation period stated in Section 41–5–13 is not based on injury, whether or not latent or slow-maturing, and is not based on cause. Plaintiff's argument is that the statute should be so based, and if not, the statute is not just. We may not look beyond the plain meaning of the words of the statute. *State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). We are to apply the unambiguous law enacted by the legislature. The legislative policy, its harshness, or unjustness, is a matter for the legislature, not this court. *Lent v. Employment Security Commission of the State of New Mexico; Varela v. Mounho*, 92 N.M. 147, 584 P.2d 194 (Ct.App.1978); *Noriega v. City of Albuquerque*, 86 N.M. 294, 523 P.2d 29 (Ct.App.1974).

The summary judgment in favor of defendants is affirmed. No costs are awarded.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.