**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 7/23/96**

**TENTH CIRCUIT**

---

FREDERICK C. TIBERI, FRED TIBERI
INSURANCE AGENCY, INC., and THE
KELLY AGENCY, INC.  ,

        Plaintiffs-Appellants and
        Cross-Appellees  ,

    v.

CIGNA CORPORATION, CIGNA FIRE
UNDERWRITERS INSURANCE CO.,
CIGNA PROPERTY AND CASUALTY
INSURANCE CO., BANKERS
STANDARD INSURANCE CO.,
CENTURY INDEMNITY CO., CIGNA
INSURANCE CO. OF TEXAS, CIGNA
INSURANCE CO., INDEMNITY
INSURANCE CO. OF NORTH
AMERICA, INSURANCE  CO. OF
NORTH AMERICA, PACIFIC
EMPLOYERS INSURANCE
COMPANY, and INA CREDIT CORP.
a/k/a INAC CORP.  ,

        Defendants-Appellees and
        Cross-Appellants  .

Nos. 95-2044 and 95-2051

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. Nos. 93-1011 JB and 93-0397 JB)**

---

Michael J. Condon of Gallegos Law Firm, PC, Santa Fe, New Mexico (J.E.
Gallegos of Gallegos Law Firm, Santa Fe, New Mexico and Steven L. Tucker of

Tucker Law Firm, Santa Fe, New Mexico with them on the brief) for Plaintiffs-Appellants and Cross-Appellees.

William C. Madison, M. Eliza Stewart, and Gregory L. Steinman of Madison, Harbor, Mroz and Puglisi, P.A., Albuquerque, New Mexico, for Defendants-Appellees and Cross-Appellants.

———————————

Before TACHA, McKAY, and JONES, Circuit Judges.[*]

———————————

JONES, Circuit Judge.

———————————

This is a diversity case involving New Mexico contract and tort law. Plaintiffs,[1] New Mexico residents, sued Defendants, a group of Pennsylvania corporations collectively doing business as "CIGNA." CIGNA filed similar counterclaims against Plaintiffs. Plaintiffs appeal the district court's award of summary judgment to CIGNA on statute of limitations grounds; CIGNA cross-appeals the district court's denial of its motions for attorney's fees and costs. We affirm in part, reverse in part, and vacate in part the ruling of the district court.

## I.

Plaintiff Fred C. Tiberi ran the Fred Tiberi Insurance Agency ("Tiberi Agency") in Albuquerque, New Mexico. The Tiberi Agency was independent and

---

[*]The Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

[1]Because Tiberi owned and operated the Fred Tiberi Insurance Agency and the Kelly Agency, we will hereinafter refer only to Tiberi.

free to place its clients with any insurance companies in the market. At that time, a group of insurance companies were operating an enterprise known as the COMPAR program. The COMPAR program was comprised of insurance companies and agencies that did business exclusively with one another. On May 8, 1980, Tiberi joined the COMPAR program by signing a written "Full Service Agency Agreement" with Defendant Insurance Company of North America ("INA"). Shortly thereafter, Defendant INAC Corporation ("INAC") loaned Tiberi money to purchase a majority interest in The Kelly Agency, Inc. ("Kelly Agency") for $1,100,000. In 1982, after INAC and Connecticut General merged with a wholly-owned subsidiary of North American General Corporation (NAGC), CIGNA was formed. COMPAR then became, in essence, an instrumentality of CIGNA. On October 1, 1982, the Kelly Agency signed a similar contract with INA, thus joining the COMPAR ranks. The agencies subsequently signed a new deal which was to take effect on January 1, 1990.

The terms of the contracts were simple: the Kelly and Tiberi Agencies became "independent contractors," and agreed to sell only COMPAR insurance. The agencies could sell insurance from other companies only with the consent of COMPAR. COMPAR, moreover, controlled the agencies' underwriting authority. Consistent with the representations it made to Tiberi during the recruitment process, COMPAR agreed to assist the agencies as it deemed necessary.

According to Tiberi, COMPAR agreed to help the agencies persevere through problems such as "uncompetitive pricing, stricter underwriting standards, unreasonable delays in providing potential clients with premium quotes, etc." Tiberi's Br. at 8. The boilerplate language of the contracts indicated that COMPAR -- and, impliedly, CIGNA -- expected "strict compliance" with the terms. CIGNA's Br. at 5. The 1980 and 1982 contracts required a minimum 5-year commitment; after five years, the agencies had to give COMPAR two years' advance notice of termination.

In 1983 and 1984, CIGNA suffered substantial insurance losses. During this time, CIGNA raised its prices and began to downsize COMPAR by selling less insurance, as well as signing fewer renewals with COMPAR agencies. In 1985, CIGNA notified COMPAR agents of reductions in commissions and withdrawal of its subsidy for errors and omissions insurance. At the 1986 COMPAR convention, David Prentiss, president of CIGNA's Agency Division, reiterated these strategies but offered incentives to "profitable" COMPAR members who remained in the program. Tiberi's Br. at 11-12. Tiberi decided to keep the Kelly and Tiberi Agencies under the program. Although he received occasional assistance from CIGNA and/or COMPAR, Tiberi incurred significant losses as a result of this decision. Consequently, Tiberi's agencies submitted a letter to CIGNA, dated March 3, 1986, expressing their dissatisfaction with the

- 4 -

program. CIGNA received similar letters from other COMPAR members in New Mexico and other states. In June of that year, at the COMPAR National Advisory Council meeting, the Council resolved to make "changes . . . to improve [the members'] position in the marketplace," and to "work hard to prove our commitment to COMPAR." Appendix, Vol. III at 725.

After 1986, however, it became apparent to CIGNA that it could not sustain COMPAR. In an internal document dated April 15, 1987, CIGNA stated that its worsening relationship with its smaller COMPAR agents required "fundamental changes in the COMPAR program and its strategic direction." Appendix, Vol. III at 708. The document lists the abandonment of COMPAR as a viable option. *Id.* at 709. CIGNA, however, chose to restrict further its coverage and raise its prices, despite warnings from COMPAR President Spike McKeeta that such actions would cause "serious ramifications." Appendix, Vol. III at 786.[2] CIGNA never notified Tiberi of these developments.

Throughout 1988 and 1989, CIGNA attempted to allay the concerns of its agents with statements such as the following:

Through the COMPAR program we can give you what you need --

the products, the capacity, the technology, the capital . . . the commitment . . . Count on it. Count on us. Statement of Ray

---

[2]McKeeta concluded that CIGNA should allow him to "eliminate, or water down the [COMPAR agent] segment" if relations with COMPAR agents did not improve. *Id.*

Thomas, Jan. 8, 1988.

. . .

I can tell you without the least reservation that we'll *always* be in a position to support the capacity needs of our COMPAR producers . . . you can feel secure with CIGNA . . . CIGNA is financially solid . . . CIGNA and COMPAR together have the technology, the support services and financial resources to survive and flourish in the present market.  Statement of David Prentiss, Jan. 19, 1988.

. . .

COMPAR requires a new and deeper level of cooperation . . . for those who make the commitment the future will be exceptionally rewarding.  Statement of David Prentiss, Jan. 8, 1989.

. . .

Every aspect of business will be examined during 1989 to improve operating efficiencies and COMPAR agents will be informed of progress.  Ray Thomas, *COMPAR News,* March 1989.

. . .

While [the] changes [to reduce COMPAR expenses] may cause some degree of pain in the short-term, we feel that the long-term outlook remains extremely positive for both parties . . . we can work together to minimize significant impact to your agency.  Letter from Wanda Tackett to Frederick Tiberi, June 1, 1989.

. . .

Recent actions have been difficult for many of you to accept.  Let me assure you that they are vital in the short term and will help to position COMPAR for the future.  [I remain] fully committed to the program and intend to see to it that COMPAR is alive and flourishing long after all of us have retired from the field of battle.  Letter from David Prentiss to COMPAR Agents, July 27, 1989.

*See* Appendix, Vol. I at 225.19-225.25. These statements, Tiberi argues, led Tiberi to believe that CIGNA would provide him support and reward him handsomely if he remained in the program. In his words, he thought that "the whole concept of this contractual relationship was built upon trust." Appendix, Vol. III at 888 (Tiberi's Deposition). Moreover, Tiberi asserts that remaining in the program was the only reasonable alternative in light of his agencies' financial straits.

In February 1990, CIGNA announced that it was changing the COMPAR program to make it "`a *non-exclusive* distribution network.'" Appendix, Vol. III at 886 (emphasis added). This amendment ended the COMPAR program as it had previously existed. Because of the new arrangement, COMPAR agents were asked to seek other insurers and "roll over" to new carriers the business of clients whom CIGNA no longer wanted. Tiberi thus ended his relationship with CIGNA after having lost 686 policies and nearly $1,500,000 in premiums from 1982 to 1989. CIGNA's Br. at 11.

On March 11, 1993, Tiberi brought suit against CIGNA in state court for breach of contract, breach of covenant, fraud, misrepresentation, and violations of the New Mexico Unfair Trade Practices Act (NMUTPA). Upon removal to the United States District Court for the District of New Mexico, CIGNA brought a Counterclaim and a Third-Party Complaint against Tiberi for breach of contract

and tortious interference with contract during the COMPAR venture. Thereafter, Tiberi twice moved to amend his complaint to add claims for breach of fiduciary duty and promissory estoppel. Tiberi's Br. at 28.

On August 16, 1994, after Tiberi had filed his Motions to Amend, CIGNA Corp. moved to dismiss for lack of personal jurisdiction. On October 12, 1994, that motion was granted. On October 17, 1994, the district court granted the other Defendants' Motion for Summary Judgment on the grounds that the statute of limitations had run. On October 29, 1994, the district court dismissed CIGNA's actions without prejudice. On February 16, 1995, the district court denied Tiberi's Motion to Alter or Amend his Complaint to address the statute of limitations issue and further denied CIGNA's Motions for costs and attorney's fees under Federal Rule of Civil Procedure 54 and/or NMUTPA. Tiberi appeals the February 16, 1995 judgment; CIGNA cross-appeals that same decision.

On appeal, Tiberi argues that the district court misapplied the statutes of limitation for his contract and tort claims. He contends that the doctrine of equitable estoppel excepts him from the normal statute of limitations requirements for contract claims. He further argues that CIGNA's conduct constituted a "continuing wrong" for the purposes of the tort claims. Finally, he argues that his Motion to Amend should have been granted because his Complaint was based on CIGNA's "misleading conduct." Accordingly, Tiberi prays that this court reverse

the district court decision and remand for further proceedings.

CIGNA maintains that the district court's ruling as it related to Tiberi was correct. CIGNA further argues that the court erred in denying its Motion for costs and attorney's fees because 1) it was the prevailing party, and 2) Tiberi's cause of action under the NMUTPA was groundless.

For the reasons that follow, we conclude that: 1) Tiberi's claims are not barred under the pertinent statutes of limitations; 2) the district court did not abuse its discretion in denying Tiberi's promissory estoppel claim, but abused its discretion in refusing to allow his breach of fiduciary duty claim; and 3) the district court's rulings regarding CIGNA's Motions for costs and attorney's fees should be vacated.

## I.

We first address Tiberi's argument that the district court erred in granting CIGNA summary judgment on statute of limitations grounds. We review this issue *de novo*. *Utah Power & Light Co. v. Federal Ins. Co.,* 983 F.2d 1549, 1553 (10th Cir. 1993). Applying this standard, we believe that the district court's decision was in error.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Ingels v. Thiokol Corp.,* 42 F.3d 616, 620 (10th Cir. 1994).

This means that after the opportunity for discovery, if the moving party demonstrates that there is no genuine issue of material fact as to the existence of any element essential to the non-moving party's case, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Once this initial burden is met, it becomes the burden of the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., et. al,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting *First Nat'l Bank of AZ v. Cities Serv. Co.,* 393 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)). Therefore, in order to withstand summary judgment in the case at bar, Plaintiffs carry the burden of proving the existence of facts which, if proven true, would warrant a tolling of the statutes of limitation. *See Dow v. Chilili Co-op Assn.,* 728 P.2d 462, 464 (N.M. 1986).

Tiberi correctly argues that in order to address the summary judgment ruling on the statute of limitations issue, the court must bifurcate his Complaint between those causes of action grounded in contract and those grounded in tort. Where a suit invokes several causes of action, each is subject to a distinct statute

of limitations; thus, distinct accrual periods should apply as to each cause of action. *See King v. Otasco, Inc.,* 861 F.2d 438, 441 (5th Cir. 1988). This is true even if the causes of action are derived from a single event. *Id.* Therefore, we will analyze the statute of limitations issue in context of applicable contract and tort law.

**A.**

Tiberi claims that CIGNA breached the contract in 1986 by substantially altering COMPAR's business practices and causing Tiberi's agencies to suffer acute losses. Tiberi's Br. at 11-13. A cause of action for breach of contract is created only upon actual breach. *Welty v. Western Bank of Las Cruces,* 740 P.2d 120, 122 (N.M. 1987). Both parties identify 1986 as the date of the alleged breach; Tiberi's March 3, 1986 letter indicates that his cause of action accrued, at latest, on that date. The limitations period on written contract claims is six years from the date of the breach. N.M. Stat. Ann. 1978 § 37-1-3(A). Because Tiberi brought his contract claim in 1993, seven years after the date on which the alleged breach was clearly identified, his suit normally would be barred by the statute of limitations as a matter of law, unless a factual basis for tolling the statute exists. *See Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Tiberi claims that even if his contract claim is barred under the statute of

limitations, the doctrine of equitable estoppel excepts him from the statute. He avers that the district court erred in refusing to apply the doctrine to toll the statute. After reviewing the applicable law, we agree with Tiberi.

The doctrine of equitable estoppel "precludes one party from asserting a [statute of limitations defense] when another party has relied to his detriment upon the acts or conduct of the first party and when asserting that [defense] would prejudice the other who has acted thereon in reliance." *Continental Potash, Inc. v. Freeport-McMoran, Inc.* 858 P.2d 66, 73 (N.M. 1993). The *Potash* court, moreover, stated:

> The essential elements of equitable estoppel as related to the *party estopped* . . . are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party . . .; and (3) knowledge, actual or constructive, of the real facts . . . As relating to *[the party claiming] estoppel*, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question . . .; (2) reliance upon the conduct of the party estopped . . .; and (3) action based thereon of such a character as to change its position prejudicially.

*Id.* at 74 (quoting *Capo v. Century Life Ins. Co.,* 610 P.2d 1202, 1206 (N.M. 1980)) (emphasis added).

Tiberi has presented facts which indicate that equitable estoppel may attach in this case. Looking at the evidence in a light most favorable to Tiberi, the facts show that CIGNA knew that COMPAR was foundering as early as 1983. In 1986,

- 12 -

despite COMPAR's continued problems, it assured Tiberi that his agencies would enjoy renewed success if he remained in the program. From 1986 to 1989, moreover, CIGNA never gave any indication to Tiberi that it would not honor its promises. CIGNA made these promises to keep Tiberi in the program. Tiberi relied on CIGNA's assurances and remained with COMPAR despite enormous losses. Their decision only resulted in further injury. These facts lead us to the conclusion that equitable estoppel is appropriate in this case. *Potash,* 858 P.2d at 74.

CIGNA, however, makes three arguments against the application of equitable estoppel in this case. Their first argument is that Tiberi has failed to prove that CIGNA, as the estopped party, "inten[ded] to deceive or delay [him]," as required to claim equitable estoppel. Even if we assume that CIGNA never intended to do so, its argument lacks merit. CIGNA relies on *Potash* in support of his argument. *Id.* The *Potash* court declared that the doctrine applies "when the party estopped intends or expects that the innocent party will act on those representations." *Potash,* 858 P.2d at 74. Yet we believe that Tiberi need only prove that CIGNA dissuaded him from taking legal action. Indeed, in *Stuckey's Stores, Inc. v. O'Cheskey,* the New Mexico Supreme Court noted that "*[r]epresentations that are contrary to the essential facts to be relied upon, even though made innocently or by mistake, will support the application of the estoppel*

*doctrine.*"  600 P.2d 258, 270 (N.M. 1979) (quoting *State ex rel. State Highway Dept. v. Shaw,* 565 P.2d 655, 658 (N.M. 1977)).  Thus, we do not believe that Tiberi needs to prove intent to deceive in order to claim equitable estoppel.  *Id.; see also City of Bedford v. James Leffel & Co.,* 558 F.2d 216, 218 (4th Cir. 1977) (citing *T. . . v. T. . .,* 224 S.E.2d 148, 152 (Va. 1976)) ("deceit is not an essential element of estoppel")).  Therefore, whether CIGNA intentionally deceived Tiberi in convincing him to remain in COMPAR, is irrelevant.  If Tiberi declined to sue on the basis of CIGNA's representations, then equitable estoppel should apply.

Second, CIGNA claims that even though it made promises in order to keep Tiberi in the COMPAR program, Tiberi cannot maintain a suit because it never intended to dissuade him from pursuing legal action.  *Id.*  We disagree.  Tiberi claims that he chose to stay in COMPAR based on CIGNA's assurances and suffered substantial loss after making that choice; this is all that the equitable estoppel doctrine requires.  *Potash,* 610 P.2d at 1206.  CIGNA, moreover, cites no case law which holds that in order to prevail on equitable estoppel, the party seeking estoppel must declare an intent to sue before the estopped party makes its misrepresentations.  To the contrary, the claimant need only "be aware of his cause of action" before the defendant dissuades him from taking further action.  *Skyberg v. United Food & Commercial Workers Int'l Union, AFL-CIO,* 5 F.3d 297, 302 (8th Cir. 1993).  Thus, this argument must also fail.

Finally, CIGNA maintains that it made no representations to Tiberi upon which he could reasonably rely for the purposes of equitable estoppel. CIGNA claims that the statements that its promises to correct COMPAR's problems were so vague, and left unfulfilled for such a long period of time, that Tiberi could not have relied on them. *Id.* In essence, CIGNA argues that the court should not allow equitable estoppel to attach because it was not serious about the promises it made to Tiberi. This would allow CIGNA "to profit from its own fraud." *Gaston,* 549 P.2d at 635. Such a result is inherently inequitable. Therefore, we conclude that the there exist genuine issues of material fact regarding whether doctrine of equitable estoppel tolls the statute of limitations so as to defeat CIGNA's Motion for Summary Judgment.

**B.**

Plaintiffs' original complaint also alleged that CIGNA's "misleading conduct" subjected them to liability for constructive fraud, fraud, negligent misrepresentation, and violations of NMUTPA. The district court granted CIGNA summary judgment on these claims, finding that the statute of limitations had run. We conclude, however, that there exists a genuine issue of material fact regarding whether the statute should have been tolled by virtue of the continuing wrong doctrine.

"In actions for relief, on the ground of fraud or mistake . . . the cause of

action shall not be deemed to have accrued until the fraud [or] mistake . . . shall have been discovered by the party aggrieved." N.M. Stat. Ann. 1978 § 37-1-7. The statute of limitations for these causes of action allows a claimant to bring suit within four years of accrual. N.M. Stat. Ann. 1978 § 37-1-4. Normally, the limitations period begins to run "when the plaintiff discovers the fraud or when, with reasonable diligence, the plaintiff could have discovered the fraud." *Ramsey v. Culpepper,* 738 F.2d 1092, 1095 (10th Cir. 1984).[3] Under the continuing wrong doctrine, however, "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." 54 C.J.S. Limitation of Actions § 177 (1987).[4] In other words, "the

---

[3]*See also New Mexico Elec. Serv. Co. v. Montanez,* 551 P.2d 634, 637 (N.M. 1976) (statute runs at the date of the injury rather than the date of the negligent act).

[4]The district court rejected Tiberi's continuing wrong argument, stating that "[t]he statutory limitations periods in question are long enough in duration to allow for attempts at compromise or settlement without the necessity for a judicially-created tolling exception." D.Ct. Op. at 10. In so doing, the court relied on *Crumpton v. Humana, Inc.,* 661 P.2d 54 (N.M. 1983). In *Crumpton,* the plaintiff sought to bring a medical malpractice suit against defendant but allowed the three-year statute of limitations to run. Plaintiff appealed, arguing that defendant should be estopped from asserting the statute because the parties were negotiating a settlement during the accrual period. The Supreme Court rejected this argument and affirmed the lower court's award of summary judgment to defendant. *Id.*

*Crumpton* is distinguishable from the case at bar for two reasons. First, *Crumpton* involved a dispute in which a settlement was being negotiated, whereas this case had not advanced to such a point. Furthermore, in *Crumpton,* the Court found no evidence of fraud or misrepresentation on defendant's part and that defendant, in fact, had made a settlement offer before the statute had run. *Crumpton,* 661 P.2d at 55. Here, however, CIGNA -- by its own implied admission, *see* CIGNA's Br. at 29 -- made misrepresentations about its intent to remedy COMPAR's deficiencies. Thus, the district

statute of limitations does not begin to run until the wrong is over and done with."

*Taylor v. Meirick,* 712 F.2d 1112, 1118 (7th Cir. 1983).

After examining the facts of this case, we think that the continuing wrong doctrine may be applied. As discussed earlier, CIGNA told Tiberi as late as 1989 that it had every intention of maintaining its commitment to COMPAR. Yet as early as 1987, CIGNA had considered abandoning COMPAR. The evidence further shows that CIGNA never informed Tiberi of its reservations about the program, leaving him to rely on their assurances. CIGNA subsequently called an abrupt end to the program in 1990. Looking at this set of facts, it is reasonable to infer that CIGNA held Tiberi to the COMPAR agreement while at the same time taking measures to dissolve it. In turn, the last injurious act would be CIGNA's announcement in February 1990 that it was ending the COMPAR program. Accordingly, we believe that Tiberi has established a genuine issue of material

---

court's reliance on *Crumpton* is misplaced.

Similarly, CIGNA argues that "[n]o New Mexico case supports Tiberi's theory for the tolling of the limitations period," and that "Tiberi's argument flies in the face of the New Mexico decisions." CIGNA's Br. at 23. To the contrary, New Mexico courts have consistently considered the applicability of the continuing wrong doctrine in a variety of cases. *See, e.g., Martinez,* 884 P.2d at 514 (doctrine did not apply where plaintiff sued priest in 1991 for sexual misconduct which ended in 1977); *Valdez v. Mountain Bell Telephone Co.,* 755 P.2d 80, 84 (N.M.App. 1988) (recognizing the doctrine); *Ealy v. Sheppeck,* 669 P.2d 259 (N.M.App. 1983); *cert. quashed,* 669 P.2d 735 (N.M. 1983) (doctrine did not apply in malpractice case where physician had not continuously treated plaintiff). Thus, although it has not been applied in every possible case, we believe that New Mexico recognizes the doctrine.

fact as to whether the continuing wrong doctrine tolls the statute of limitations for Tiberi's fraud claims.

CIGNA, however, contends that the continuing wrong doctrine is inapplicable in this case because Tiberi knew of his injury, and the cause thereof, since at least 1985. Indeed, the doctrine cannot be employed where the plaintiff's injury is "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Wilson v. Giesen,* 956 F.2d 738, 743 (7th Cir. 1992). In the instant case, however, this argument is misplaced. While it is true that Tiberi suffered losses, the facts indicate that he attributed that injury to the risk of loss which is inherent in every contract. Tiberi had no reason to believe that he was being defrauded because CIGNA had given him every assurance that it would compensate him for his losses and reward him for remaining a COMPAR agent. Tiberi's allegations that CIGNA made these assurances while planning to dismantle the program constitute a continuing tort. As a result, "[t]he running of the statute of limitations in cases of fraud may be suspended by a repetition or continuation of the false representations which keeps the defrauded person in ignorance of the fraud." 54 C.J.S. Limitation of Actions § 195 (1987). Thus, Tiberi cannot be penalized for his delay if CIGNA's misrepresentations prevented him from ascertaining the cause of his injury.

Furthermore, application of the continuing wrong doctrine is appropriate in

light of the relationship between the parties. Under the COMPAR agreement, Tiberi was to deal exclusively with CIGNA. He was beholden to CIGNA's interests, and as a result, he invested a great deal of trust in CIGNA. Such a relationship gives rise to a duty to disclose information to which Tiberi had no access. *R.A. Peck, Inc. v. Liberty Fed. Sav. Bk.*, 766 P.2d 926, 933-34 (N.M.App. 1988) (discussing relationship between banks and their customers).

In summary, we find that it is reasonable to infer that CIGNA held Tiberi to the COMPAR agreement while at the same time taking measures to dissolve it. In turn, we believe that there is a genuine issue of material fact as to whether the continuing wrong doctrine applies in this case. Thus, the district court's award of summary judgment to CIGNA was in error.

## II.

Tiberi claims that the district court abused its discretion in refusing to allow him to amend his complaint to add causes of action for promissory estoppel and breach of fiduciary duty. "We review denial of plaintiff's motion to amend for abuse of discretion." *Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir. 1992). Under this standard, the district court must be upheld "`if the proposed amendment would not have withstood a motion to dismiss or otherwise failed to state a claim.'" *Id.* (quoting *Schepp v. Fremont County,* 900 F.2d 1448, 1451 (10th Cir. 1990)). The district court, however, denied Tiberi's motion to amend on

the grounds that the claims would have been time-barred, but never addressed whether Tiberi had adequately stated a claim. We believe that the district court was justified in denying the motion on the promissory estoppel claim, but was not justified in doing so with regard to the breach of fiduciary duty claim.

## A.

Tiberi's first proposed amendment alleged that he was entitled to relief under the theory of promissory estoppel. This theory holds that "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1) (1981). It constitutes "a contract implied in law where no contract exists in fact." *Del Hayes and Sons, Inc. v. Mitchell,* 230 N.W.2d 588, 593 (Minn. 1975). Consequently, this theory is applied in lieu of a formal contract. *See Planning and Design v. Santa Fe,* 885 P.2d 628, 636 n.2 (N.M. 1994); *see also Romero v. Mervyn's,* 784 P.2d 992, 995 n. 1 (N.M. 1989). Where, however, a contract exists between the two parties, the doctrine is inapplicable. *Frey v. Ramsey County Community Human Servs.,* 517 N.W.2d 591, 602 (Minn. App. 1994). Because the parties in this case entered into a formal contract, we do not believe that promissory estoppel applies here. As a result, we need not consider whether this cause of action was time-barred. Therefore, the

district court's denial of the amendment should stand.

## B.

Tiberi's second proposed amendment charges CIGNA with a breach of fiduciary duty. The threshold inquiry in assessing this claim is whether a fiduciary relationship actually existed between Plaintiffs and CIGNA. The New Mexico Supreme Court has held that "[a] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *Swallows v. Laney,* 691 P.2d 777, 785 (N.M. 1984).

Here, Tiberi has presented sufficient evidence to prove that there exist genuine issues of material fact regarding whether such a relationship existed. The COMPAR contract required Tiberi to sell only CIGNA insurance. This requirement made Tiberi an exclusive agent of CIGNA; thereafter, Tiberi's success hinged solely on CIGNA's performance. The fact that Tiberi agreed to enter such a contract indicates that he placed great trust in CIGNA's judgment. Thus, his claim should be allowed to go forward.

CIGNA, on the other hand, claims that it owed no fiduciary duty to Plaintiffs and that the relationship between the parties was purely contractual. In so arguing, CIGNA relies heavily on this court's decision in *Dodd Ins. Servs. v.*

*Royal Ins. Co. of America,* 935 F.2d 1152, 1157 (10th Cir. 1991). In *Dodd,* the plaintiff, an independent insurance agency doing business in Colorado, entered a contract with an insurance company to sell that company's insurance. Plaintiff alleged, *inter alia,* a breach of fiduciary duty when the company attempted to terminate the contract. *Id.* at 1154. The district court granted summary judgment to the company, and we affirmed that decision. In doing so, we rejected plaintiff's claim that he placed great trust in defendant, reasoning that "plaintiffs ran an independent insurance agency that made all of its own business decisions and sold insurance policies for companies other than Royal." *Id.* at 1157. Therefore, we held that "[s]uch a relationship does not give rise to a fiduciary duty." *Id.*

Defendants' reliance on *Dodd* is of no avail in the instant case. Unlike the plaintiff in *Dodd,* Tiberi was bound to sell only COMPAR insurance. Furthermore, CIGNA made the majority of the important business decisions for Tiberi and the other COMPAR agents. In short, the COMPAR arrangement was far more restrictive than the arrangement in *Dodd.* Thus, we find that *Dodd* is not applicable in the instant case.[5]

---

[5]In support of its argument that its relationship with Tiberi was not fiduciary in nature, CIGNA seeks to prove that Tiberi "circumvented the `purity' requirement" of the contract by conducting non-COMPAR business with and without its consent. CIGNA's Br. at 40. While it is true that CIGNA allowed Tiberi to retain such business, there is no evidence that Tiberi did so without CIGNA's consent. Therefore, CIGNA's assertions are

Having decided that Plaintiffs' breach of fiduciary duty claim survives review, we also find that the district court wrongly deemed this cause of action time-barred. Applying the same reasoning in Section I-B, *supra,* we find that a genuine issue of material fact exists regarding when Tiberi discovered that CIGNA breached its fiduciary duty. As a result, Tiberi may be excused from pursuing his claim at an earlier date. 54 C.J.S. Limitation of Actions § 196 (1987) (where "there is a fiduciary or confidential relationship between the parties, failure to exercise reasonable diligence may be excused"). Therefore, we find that Tiberi's breach of fiduciary duty claim would have withstood dismissal, and that the district court abused its discretion in refusing to allow Tiberi to assert this claim.

## III.

CIGNA cross-appeals the district court's denial of its Motions for costs and fees under Rule 54 and NMUTPA, respectively. Under Rule 54, "costs other than attorney's fees shall be allowed *as a matter of course* to the prevailing party unless the court otherwise directs . . ." Fed. R. Civ. P. 54(d)(1). Under NMUTPA, N.M. Stat. Ann. 1987 § 57-12-10(C), the court shall award attorney's fees and costs to a victorious defendant if it is shown that the NMUTPA plaintiff's suit is "groundless." Because we find that the district court erred in

of minimal relevance to this issue.

- 23 -

awarding summary judgment to CIGNA, we need not consider CIGNA's cross-appeal.  We thus vacate the district court's rulings on these issues, and dismiss CIGNA's cross-appeal.

For the reasons hereinabove stated, we **REVERSE** the district court's award of summary judgment to CIGNA and its denial of Tiberi's motion to amend his claim to add a cause of action for breach of fiduciary duty.  We also **AFFIRM** the district court's denial of Tiberi's motion to amend his complaint to add a promissory estoppel claim.  Finally, we **VACATE** the district court's decision regarding CIGNA's Motions for costs and attorney's fees under Rule 54 and NMUTPA.  We thus remand this case to the district court for further proceedings not inconsistent with this opinion.

**95-2044, 95-2051, Tiberi et al. v. CIGNA**

**Tacha, Circuit Judge, dissenting:**

I respectfully dissent. My review of the record in this case reveals no disputed issues of material fact which would support the application of the continuing wrong doctrine. I further find no basis in this record for finding that the district court abused its discretion in refusing to allow Tiberi to amend his complaint with regard to the claims related to a breach of fiduciary duty. I would have affirmed the district court's grant of summary judgment in favor of CIGNA on these grounds for substantially the reasons given by the district court.